142 So. 665

## JORDAN v. STATE.

### 6 Div. 86.

Supreme Court of Alabama.

June 10, 1932.

Rehearing Denied June 30, 1932.

Jim Gibson, of Birmingham, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

BROWN, J.

The appellant was convicted of murder in the first degree and sentenced to suffer death by electrocution.

The indictment charges that "James Jordan, alias James Austin unlawfully, and with malice aforethought, killed Mrs. C. A. Allen by striking her with a rock," etc.

The appellant's first contention is that the state's evidence wholly failed to prove the corpus delicti, and, therefore, the court erred in refusing the affirmative charge requested by him in writing.

The state's witness Lena Mae Allen testified: "My name is Miss Lena Mae Allen, and I live on Red Mountain at the Birmingham Trap Shooting Club. I was living there on April 3rd of this year with my mother and father and family. My mother was Mrs. C. A. Allen. She is now dead, having died April 5th, 1931. On the 3rd day of April my mother and my little sister and I were there at home. On that day I last saw my mother in front of the ore mine about fifty yards from the house. My mother and little sister were over near this ore mine. Mother was working in the garden and I was cooking. My little sister was with my mother, and mother came to the house. * * * After mother came to the house and talked with me we went to look for the cow, my mother my little sister and I. We went right by the mouth of the mine, and when coming back from where the cow was, we come by the mine and this negro met us there at the mouth of the mine. I had never seen that negro before that day. Since then I have seen him lots of times in jail, and I have seen him when the officers brought him out to our house. I have also seen him in the court room this week, and this (indicating defendant) is the negro I am talking about. I now know him as James Jordan. When I saw him that day he was walking around the house; that was before my mother came from the garden. I next saw him in front of the mine, and he said he was looking for a place to make a whiskey still. I told him there wasn't a place around there for him to make one, and he didn't say anything more about a whiskey still but asked for some water. We were all then going to the house, and the negro followed behind us. When he got to the house we told him we didn't have any water, but he insisted, and we gave him a drink of water. My mother and little sister and I were in the house, and he was drinking the water, and asked me my name and I told him. He asked was my daddy at home, and mother told him that he was, that he was asleep, and that he worked at night; and he told her he wasn't there when he was. He said my father wasn't in the house when he, the negro, was in the house. We were already in the house then, but this negro made us go on backwards further into the house; and he told me I had hid the money when we went by the mines, and said I was going to get it. I told him if there was any money in the mine he put it there. Then he said I was going to get it, and said it was under that big rock there. That was when we were in front of the mine; he drove us down there, through a ditch. * * * When we were in front of the mine I didn't go in the mine, but mother started down in the mine. He commanded her to go in the mine, and she started in. I didn't go, and he asked me wasn't I going, and I told him no. He then hit me across the head with a blackjack, and I ran, and my little sister followed. I stopped and looked back and saw him hit my little sister in the head with a rock, and I saw her fall. I saw my mother lying on the ground, and after he hit my little sister with a rock, he

was holding a large rock up above her head. My mother looked like she was unconscious. * * * I looked back and saw my mother lying on the ground by the side of the mine, and she was bleeding. I didn't move: I stood there and he come up to me after my mother and little sister couldn't speak,—or they didn't."

Dr. Moore testified that he was the family physician of C. A. Allen; that when he reached Mrs. Allen, soon after her injury, there were contusions and abrasions on her face and head; that the "eyes were swollen closed, and her features were unrecognizable"; that there were many contusions on her chest and her lungs were full of blood when he picked her up; that he carried her to the hospital and had X-ray views taken of her head, and that these X-rays showed that her skull was fractured; and that she died·within thirty-six hours after. she was carried to the hospital.

■ This evidence, with the legitimate inferences which it was the province of the jury to draw, if believed by them beyond a reasonable doubt, shows the death of the person alleged to have been killed, and that said death was caused by criminal agency, as alleged in the indictment—the corpus delicti. Shelton v. State, 217 Ala. 465, 117 So. 8; Ratliff v. State, 212 Ala. 410, 102 So. 621; Watson v. State, 217 Ala. 164, 115 So. 101; Daniels v. State, 12 Ala. App. 119, 68 So. 499; 13 R. C. L. 736, §§ 40–42; 7 R. C. L. 774, §§ 2–4.

■ This evidence also goes to identify the appellant as the culprit. The affirmative charge requested by the defendant was, therefore, refused without error.

■ The appellant's next contention is that the court, over timely objection, allowed the state to offer evidence going to show that immediately following the assault on the mother and little sister of the witness Lena Mae, rendering them unconscious, the appellant raped the witness and stabbed her with a knife, and the attending circumstances of the crime.

In Miller et al. v. State, 130 Ala. 1, 30 So. 379, 383, an appeal from a conviction for murder, the court ruled: "Other offenses are allowed in evidence to show· a motive for committing the offense under investigation. The existence of this motive depends upon the inquiry whether the defendants committed the other offenses, and, of course, proof that [he] did commit them must needs involve evidence as to the particulars of those offenses,—evidence of the several acts which enter into and constitute them." Powell v. State, 219 Ala. 557, 123 So. 34.

. The evidence held to have been erroneously admitted in Oakley v. State, 135 Ala. 15, 33 So. 23, was not the particulars of the assault on the mother who went to the assistance of her daughter, but evidence as to the after effect of the assault—that it "*disabled her to do cooking*," and is not within the rule of Miller v. State, supra, reaffirmed in Powell v. State, supra. (Italics supplied.)

The ruling of the circuit court in the case at bar was free from error.

■ The next contention of the appellant is that the court erred in overruling his objection to the following question asked the witness C. W. Austin, by the solicitor, "I will ask you whether the girl made the same representation to you repeatedly?" which was answered by the witness, "Yes sir."

The contention is that this violates the rule against fortifying the testimony of a witness who has testified by statements made by such witness out of court and not under oath. Jones v. State, 107 Ala. 93, 18 So. 237.

The witness Austin had not testified in respect to any representations made by the girl, Lena Mae Allen, to him, and what representations the question referred to do not appear. If to statements made by Miss Allen in the presence of Austin, as to the identity of the appellant as the person who committed the crime, brought out by the defendant on cross-examination, to the effect that she was not positive that appellant was the man, its tendency was to fortify and bolster up the discrediting testimony brought out by appellant on the cross-examination of the witness Lena Mae Allen, going to discredit her positive identification of the appellant as the guilty culprit. Therefore, conceding error in this ruling, it was without injury to the appellant.

■ The next insistence of appellant is that error was committed by the court in sustaining the solicitor's objection to the following question put to the witness Lena Mae Allen: "I will ask you if at that time and place that we have discussed, at the Hillman Hotel, some four months after this occurred, when this defendant was there and you were there, and Mr. Degroat and others, if these other officers didn't come into the room and if Mr. Degroat didn't tell these officers, in your presence, that you had failed to identify the negro, and had said that he, this defendant, was not the one?"

The circumstances hypothesized in this question did not call upon the witness to enter into a disputation with the officers of the law present, in respect to the identity of the accused. She was not accused of wrongdoing or crime, and had previously testified that on that occasion she was not able to positively identify the accused as the culprit.

Moreover, this predicate is faulty in not hypothesizing the reaction, if any, of the witness to the statement of Degroat. *Silence* in

circumstances calling for a denial is the evidentiary fact to be shown. Rowlan v. State, 14 Ala. App. 17, 70 So. 953; Alabama Great Southern R. Co. v. Brooks, Adm'r, 135 Ala. 401, 33 So. 181, 183.

In the case last cited the witness Park was charged with negligently causing the death of the plaintiff's intestate by ordering him to go between the cars and connect the air brakes, and the witness had testified for the defendant, on his direct examination, that he had not ordered Brooks to go in between the cars at the time he was hurt, and that when he went between them he went voluntarily. The question put to the witness in that case was: "Didn't he (the deceased) say to you (on the occasion and at the place referred to in the foregoing exception), that he was not trying to make the coupling, but was trying to attach the air [brake], which you had ordered him to do, at the time he was hurt, *and were not you silent when that was said?*" (Italics supplied.)

We have examined the other questions argued relative to the cross-examination of the witness Lena Mae Allen, and are of opinion that the cross-examination was full and exhaustive, and that no error intervened in respect thereto; nor does error appear in respect to the evidence offered in rebuttal.

█ While some of the remarks of the solicitor embraced in the excerpt therefrom, made the basis of the appellant's eighth contention, may be subject to criticism, some of them were proper, and the objection going to the whole was not well taken. Louisville & Nashville R. Co. v. Hurt, 101 Ala. 34, 13 So. 130; Louisville & N. R. Co. v. Holland, 173 Ala. 675, 55 So. 1001; C. D. Hauger Co. v. Abramson, 215 Ala. 174, 110 So. 152.

■ █ The evidence, which, if believed by the jury beyond a reasonable doubt, justified the conclusion expressed in the verdict of the jury, and after careful consideration thereof, we cannot affirm that the verdict of the jury is contrary to the great weight of the evidence. Caldwell v. State, 203 Ala. 412, 84 So. 272; Patterson v. State, 224 Ala. 531, 141 So. 195.

█ The evidence offered to support the grounds of the motion for new trial, asserting newly discovered evidence, does not appear in the bill of exceptions, and therefore nothing is presented for review on this phase of the case. Code 1923, § 6088; Langley Bus Co. v. Messer, 222 Ala. 533, 133 So. 287.

We find no reversible errors on the record, and the judgment of conviction and sentence will be affirmed.

Affirmed.

All the Justices concur, except KNIGHT, J., not sitting.