191 So. 249

## WESSON v. STATE.

### 6 Div. 434.

Supreme Court of Alabama.

June 15, 1939.

Rehearing Denied Oct. 12, 1939.

400

Beddow, Ray & Jones, of Birmingham, for appellant.

Thos. S. Lawson, Atty. Gen., and Noble J. Russell, Asst. Atty. Gen., for the State.

BROWN, Justice.

Section 3258 of the Code 1923 provides: "In cases taken to the supreme court or court of appeals under the provisions of this chapter [chapter 74], no assignment of errors or joinder in errors is necessary; but the court must consider all questions apparent on the record or reserved by bill of exceptions, and must render such judgment as the law demands. But the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant."

It has been said that this statute, construed in pari materia with others embodied in said chapter, makes the right of appeal in criminal cases one of substance imposing on the court a duty to search the record for errors. Campbell v. State, 182 Ala. 18, 62 So. 57; Roberson v. State, 175 Ala. 15, 57 So. 829; Bigham v. State, 203 Ala. 162, 82 So. 192; Howerton v. State, 191 Ala. 13, 67 So. 979; Stone v. State, 208 Ala. 50, 93 So. 706.

In Campbell v. State, supra, it was observed [182 Ala. 18, 62 So. 60]: "While the right to appeal is purely a creature of our statutes, the Legislature, by adopting the above provisions of our Code, clearly indicates the legislative purpose that such right shall not, in any criminal case, become a mockery, but that the right shall be substantial, and that this court shall see to it that a defendant who has been convicted in a criminal case, and who has reserved a question of law for the consideration of this court, and who prays an appeal, shall be accorded the privilege of having the legal questions presented by his record properly passed upon."

If the question reserved on the record or by bill of exceptions is of substance which might have affected the result, it is of no importance that the appellant or his counsel have not argued the question.

On the direct examination of the State's witness, Henry Latham, he testified: "After I got on the outside of the building, Mr. Wesson went on one side of the building and I went on the other. I stood there about two minutes while they were on the other side of the building. About that time Mr. Wesson came by me and handed me his car keys, and told me to give them to Ernest Brown. Wesson then left. He went down behind the building. As he left he said to me, 'I am going before they kill me.' Knox Wesson did not leave along the highway. He went behind the building where it was swampy. After Knox Wesson left, I saw Ernest Brown and gave him the keys to the automobile."

On cross-examination the defendant's counsel put to State's witness Latham, the following questions:

"Q. Now, Mr. Latham, did Brown tell you at the time that he took those keys that he had had a fight with this man, the deceased, Moro? * * *

"Q. Did Brown tell you at that time and place he cut this man Moro? * * *

"Q. Well, I will ask you then to state at the time you turned the keys over to Brown, everything you said to Brown and everything Brown said to you?"

The court sustained the objections of the solicitor that said questions "called for irrelevant, illegal, incompetent and immaterial testimony," and in these rulings committed error. The State having brought out a part of the transaction, the defendant was entitled to bring before the jury the whole transaction and show what was said at that particular time and place. Richardson v. State, 237 Ala. 11, 186 So. 580, and authorities there cited.

■ The version of the State's witness, Christine Gilbert, as to how the difficulty in the house was brought about, to quote her testimony:

"I had been dancing with Tony Moro and we had stopped dancing at the time the difficulty started. I was standing up. Tony Moro was standing up. We were standing by the booths where Knox Wesson and another girl were sitting. *Knox Wesson said to Tony Moro, 'I bet I have got more money than you have.'* Tony Moro said, 'Buddy if you have 50¢ you have got more money than I have.' Knox Wesson pulled a knife out of his pocket. It was open, Knox Wesson said, 'Do you want to get rough about it?' Tony Moro said, 'No sir. I don't want to get rough about anything.' Knox Wesson started pulling his jacket off. When Wesson jumped up some people grabbed him and were holding him to keep him from fighting. Tony Moro was just standing there. They held Knox Wesson a few minutes. Then Tony Moro started walking off back toward the counter. I was behind him. They then turned Knox Wesson loose and he hit Tony Moro over my head." [Italics supplied.]

Later on the State introduced Lois Green as a witness who testified: "Knox Wesson and Tony Moro got into a fight. Just before the fight I was sitting in one of the booths with Mr. Wesson, the defendant. Prior to that time I had not danced with Mr. Wesson that night. He and I had been sitting in the booth about ten minutes before the fight started. The music had stopped. I was sitting in one of the booths talking to Mr. Wesson. I was selling him some punches off of a punch board I had in my hand that night. Tony Moro came up to the booth where we were sitting and spoke first. *He looked at me and said, 'It won't be paid for.'* Mr. Wesson looked at Mr. Moro and said, 'Well, I imagine I can pay for about as many as you can.' Tony Moro then said, well, if you have fifty cents you have as much as I have. At that Mr. Wesson got up out of the booth where he was sitting. Mr. Moro appeared to be mad. Mr. Wesson pulled off his jacket and laid it down in the next booth according to my best recollection. At that time I walked towards the back of the room and did not see the first lick that was struck." [Italics supplied.]

At this point in the examination of the witness the solicitor claimed surprise, and the court over defendant's repeated objections allowed the solicitor to bring out what said witness testified before the grand jury.

There is nothing in this testimony to justify the solicitor in claiming surprise, or show that the witness was hostile to the State. At most it conflicts with the testimony of the witness Gilbert as to which of the parties spoke first, and the testimony of this witness on its face appears to give the most human and reasonable version. The applicable rule, or to be more correct, the exception to the general rule, is stated in Hickman v. State, 12 Ala.App. 22, 27, 67 So. 775, and authorities there cited.

■ On cross-examination of the State's witness, Miss Green, she testified in response to questions put to her by defendant's counsel that the witness, Christine Gilbert, who had previously testified, coached her in regard to what she would say and told her what to say when she got on the stand, and that witness Green agreed to say "the things that were right on it."

Defendant's counsel then asked the witness: "Isn't it a fact that this woman [Gilbert] at first tried to get you to say you were out there at the car and saw the cutting? Did she do that or not?"

The solicitor objected to this question on the ground "It is not in rebuttal of anything that the witness testified to." The solicitor then withdrew the objection, nevertheless the court sustained the objection and defendant excepted.

An affirmative answer showing that the witness Gilbert attempted to fabricate testimony against the defendant was a strong circumstance going to want of credibility of Gilbert's testimony previously given. Southern Home Insurance Co. of the Carolinas v. Boatwright, 231 Ala. 198, 164 So. 102.

■■ The statement of Ernest Brown to the arresting officer in the presence and hearing of the defendant to the general effect that he, Brown, cut and killed Moro and that Wesson had no part in the last fight was hearsay, and the objection thereto was properly sustained. Smith v. State, 9 Ala. 990; Snow v. State, 54 Ala. 138; Snow et al. v. State, 58 Ala. 372, 375; West v. State, 76 Ala. 98; Owensby v. State, 82 Ala. 63, 64, 2 So. 764; Donnelly v. United States, 228 U.S. 243, 273, 274, 33 S.Ct. 449, 57 L.Ed. 820, Ann.Cas.1913E, 710; Levison v. State, 54 Ala. 520, 527. This testimony was also

402

objectionable on another ground. It was an attempt to bolster the testimony of Brown by unsworn statements made out of court which is not permissible. Nichols v. Stewart, 20 Ala. 358; Jones v. State, 107 Ala. 93, 18 So. 237; Jordan v. State, 225 Ala. 350, 142 So. 665; Long v. Whit, 197 Ala. 271, 72 So. 529.

Defendant's refused charge B which asserts that: "If you believe from the evidence that the defendant withdrew *from the dance hall* in good faith, and you further believe from the evidence that the defendant took no part in the homicide on the outside, and did not aid, abet or encourage any one in the commission of said homicide then you should acquit the defendant," had a tendency to inculcate the idea that a withdrawal *from the dance hall in good faith* was tantamount to a withdrawal from the difficulty or fight, and for this misleading tendency, if no other, was refused without error. It also ignored certain tendencies of the evidence.

For the error noted the judgment is reversed. The defendant will remain in custody until legally discharged.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.