14 So.2d 588

### WESSON v. STATE.
### 6 Div. 962.

Court of Appeals of Alabama.

June 15, 1943.

Rehearing Denied June 30, 1943.

Beddow, Ray & Jones, of Birmingham, and Pennington & Tweedy, of Jasper, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

**RICE, Judge.**

Appellant was convicted of the offense of manslaughter in the first degree and his punishment fixed at imprisonment in the penitentiary for the term of five years.

This is the second appeal in the case. On the former trial appellant was convicted of the offense of murder in the second degree—thus acquitting him of the offense of murder in the first degree, with which he was also charged,—and his punishment fixed at imprisonment in the penitentiary for the term of twenty-five years. The judgment of conviction on that trial was reversed by our Supreme Court. See Wesson v. State, 238 Ala. 399, 191 So. 249, 251.

Tony Moro, Jr., was so horribly stabbed with a pocket knife that he died. Immediately prior—two minutes, or five minutes, or ten minutes—to the time he was stabbed, he was engaged in a terrific fist fight with appellant, inside a public dance hall and beer parlor. The fist fight ended, or suspended, or squelched by the dance hall proprietor, Tony Moro, Jr., went out of the dance hall and seated himself in an automobile immediately at the front of same. There, shortly thereafter, he was stabbed as noted—rather, he was ordered out of the car and immediately so stabbed.

One Ernest, alias "Cotton," Brown, who went to the dance hall with appellant, was likewise indicted for the stabbing (murder) of deceased.

The testimony, as to whether Brown or appellant did the stabbing; as to whether or not they collaborated in doing it; as to whether or not they conspired to do it; as to whether or not Brown or appellant followed deceased to the car where he had seated himself; in fact, as to every single circumstance surrounding the fist fight inside the dance hall, as well as its continuation just outside the door, was in the most utter and hopeless and irreconcilable confusion and conflict. None but a jury was competent to say just what were the said circumstances.

As a learned judge in a sister state said, so say we: "In our view, the composite determination of a jury of laymen in a matter of this kind is the most satisfactory method the wit of man has ever devised for ferreting out the truth of such controversies."

It was the theory of the State, supported sufficiently by its testimony, that the stabbing of Tony Moro, Jr., just outside the dance hall was but the culmination, or continuation, of the fight (with fists) between appellant and Moro just inside said hall; and that said stabbing was done by appellant, or by Ernest ("Cotton") Brown in furtherance of a conspiracy formed between him and appellant immediately between said fist fight and the actual stabbing—but while the contest between deceased and appellant was still, in actuality, in progress.

It was the contention of appellant, likewise sufficiently supported by his testimony, that the fight between himself and Moro inside the dance hall (without weapons) was fully, and finally, and definitely concluded; that he did not go outside to the car where deceased was sitting, but went immediately away from the locality; that he had no agreement of any sort with "Cotton" Brown; that he was not present when deceased was stabbed; knew nothing of it; had nothing whatever to do with it; and that once the fist fight was over he withdrew fully and completely from any further difficulty with deceased.

Of course appellant was entitled to have the jury instructed as to the law relating to the case made by the tendencies of his testimony. To this end he requested the trial court to give to the jury the following written charge, viz.: "9. If you believe from the evidence that the defendant withdrew from the difficulty in the dance hall in good faith, and you further believe from the evidence that the defendant took no part in the homicide on the outside of the dance hall, and did not aid, abet or encourage any one in the commission of said homicide, then you should acquit the defendant."

We see no escape from the conclusion that the written charge just quoted stated a correct proposition of law and should have been given to the jury.

True, a charge in similar language—except that it postulated a withdrawal "from the *dance hall*"—was condemned by our Supreme Court on the former appeal in

this case. Wesson v. State, supra. Condemned for the reason, as stated there, that it "had a tendency to inculcate the idea that a withdrawal from the *dance hall* in good faith was tantamount to a withdrawal *from the difficulty or fight*". (Italics ours.) And that the learned justice writing for the court added the observation that "it also ignored certain tendencies of the evidence."

Now, here, after the charge in question is changed to meet the first criticism by the Supreme Court—and the criticism for which it was really condemned—we are urged to hold it properly refused because of the observation, mentioned, by our Supreme Court, viz.: "it also ignored certain tendencies of the evidence,"—meaning, as is argued to us, and as we believe was *meant*, it ignored those tendencies of the evidence which indicated a *conspiracy* between appellant and "Cotton" Brown.

But we are not persuaded. If the observation quoted *did* mean what it seems it meant we entertain no doubt the learned justice writing same had not fully reflected. It was just a sort of "moreover" expression, anyhow, and unnecessary to the holding he had just announced. We are sure that neither he nor the Supreme Court expected us to be bound by it. Code 1940, Tit. 13, Sec. 95.

It is our view that whatever evidence there is of a conspiracy was touching one formed in the interim between the "fist fight" in the dance hall and the stabbing of deceased just outside the door. Appellant could not have withdrawn from the "difficulty in the dance hall in *good faith*" and yet have been a party to a conspiracy with "Cotton" Brown to slay deceased by stabbing him out of doors. Neither do we see how it could be said that appellant was a party to such a conspiracy without "encouraging" any one in the commission of said homicide. So we do not think said charge ignored any "tendencies of the evidence." It seems to us to state, under the circumstances, a sound proposition of law. Its substance was not otherwise given to the jury; it was highly important to appellant; and its refusal constituted error for which the judgment of conviction must be reversed.

It is so ordered.

Reversed and remanded.