938

## UNITED STATES v. DI ORIO.
### No. 8782.

Circuit Court of Appeals, Third Circuit.

Argued July 24, 1945.

Decided Aug. 14, 1945.

Harold Simandl, of Newark, N. J. (Anthony A. Calandra, of Newark, N. J., on the brief), for appellant.

Grover C. Richman, Sr., Asst. U. S. Atty., of Camden, N. J. (Thorn Lord, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before BIGGS, WALLER, and Mc-LAUGHLIN, Circuit Judges.

WALLER, Circuit Judge.

At or about 3:45 on the afternoon of April 26, 1944, several state officers found an illicit moonshine still in the horse barn on the Carkhuff farm in Somerset County, New Jersey. Secreting themselves, they watched and waited until approximately six o'clock, when one Stanley Pawlowski appeared on the scene and was arrested. At or about nine o'clock that night hidden officers saw the lights of an automobile as it approached the point where the road leading to, and beyond, the Carkhuff farm intersects the old York highway, at a point variously estimated to be between ⅛ of a mile and one mile from the Carkhuff farmhouse. Oddly enough, the driver extinguished the lights on his automobile shortly before leaving the highway and entering the lane leading by the Carkhuffs' house. Slowly, but with the accuracy of one familiar with the surroundings and with the stealth of one bent on concealing his approach, this nocturnal navigator drove to a point opposite the barn containing the still, where he turned in and came to a stop within eight or ten feet of the barn.

Thereupon two of the officers, with drawn guns, appeared beside his car, to his evident consternation and dismay, and gave the command: "Get out and get your hands up." Visibly frightened, the driver obeyed, meanwhile saying to the officers: "All right, you got me. Let's get it over with." And thus was accomplished the arrest of the appellant, Angelo DiOrio, sometimes called "Slim."

He was taken into the kitchen of the Carkhuff home where the following dialogue between him and one of the officers was said to have ensued:

Officer: "Slim, isn't this the first time you ever came into one of your stills?"

Slim: "Yes, God damn it, this is the first time. I ought to have my head examined."

Slim is also said to have told Officer Cirone: "Well, I guess that is another feather in your hat."

According to Officer Webster, when appellant had been detained at the farmhouse approximately two hours, he inquired: "What are we waiting for?"

Officer Lurie replied: "Well, we have a lot of things to do yet."

To which appellant urged: "Let us go. There won't be any more men here tonight."

Mrs. Carkhuff and her sons, Raymond and Russell, along with Pawlowski and DiOrio, were indicted in five counts charging a conspiracy in the first count, and substantive offenses alleging in substance: (a) The possession of an unregistered still; (b) unlawfully engaging in the business of a distiller with the intent to defraud the Government of taxes; (c) making and fermenting a quantity of mash fit for distillation in a building not then and there a distillery; (d) and concealing 265 gallons of distilled spirits on which the required tax had not been paid, with the intent to defraud the United States. A severance was granted to Mrs. Carkhuff because of illness. Her two sons were acquitted, but Pawlowski and DiOrio were convicted on all counts. Only DiOrio has appealed.

At the time of his arrest, and on trial, appellant denied any knowledge of, or connection with, the still and its operations and the Carkhuffs denied ever having seen him theretofore.

Appellant undertook to explain his presence and manner of approach by insisting that the defendant Pawlowski owed him $250 as a loan, made some months before. Having acquired the impression that Mr. Pawlowski was not overzealous in his efforts to repay the loan, he set out that afternoon seeking Pawlowski and repayment. Inquiry from Mrs. Pawlowski, at her home, revealed that her spouse was at the Carkhuff farm. Not knowing where that farm was, he obtained directions from Mrs. Pawlowski as to its location. He also got additional directions at a filling station en route. Clear and explicit, indeed, these directions must have been, for they enabled him to drive to the place at night, minus lights, albeit he denied: (a) Having extinguished his lights; (b) having ever been to the place before; (c) or having any part in the illicit enterprise. He insisted that he was intently attempting to locate his delinquent debtor and to collect the money needed to relieve his financial necessities, even though he had $600 in cash on his person at the time of his arrest.

Counsel for appellant state that the question involved is: Did the trial Court err in refusing to grant appellant's several motions for dismissal and acquittal?

Their chief argument is that the Government failed to prove the corpus delicti or the existence of any conspiracy in the present case, and that in the absence of such antecedent proof any admissions by the defendant were not receivable in evidence.

■ Unquestionably, the Government proved the existence of an unlawful still, of untax-paid liquor, the presence of illegally produced mash, etc. In other words, the fact that the substantive acts charged in Counts 2, 3, 4, and 5 were proven *to have been committed by someone* is not even disputed. The corpus delicti may be established by showing that a crime has been committed or by showing an act and that it was committed by a criminal agency. Proof of the identity of the perpetrator of the act or crime is not a part of the corpus delicti.[1]

1 "Proof of identity of accused is not an essential part of 'corpus delicti'." Vernon v. State, 239 Ala. 593, 196 So. 96.

"The 'corpus delicti,' as used in criminal law, *means the fact that a crime has been* committed." Hunt v. State, 216 Ind. 171, 23 N.E.2d 681.

" 'The corpus delicti may be established without showing that offense charged was committed by the accused' " but it means " 'the actual commission by some one of the particular offense charged.' " Hopkins v. State, 75 Okl.Cr. 268, 130 P.2d 543, 544.

"Criminal agency of the accused is not an element in the 'corpus delicti'." State v. Bennett, Mo.Sup., 6 S.W.2d 881.

In 14 Amer.Jur. 758, § 6, is found the following:

"Generally speaking, the term 'corpus delicti' means, when applied to any particular offense, that the specific crime charged has actually been committed by someone. It is made up of two elements: (1) That a certain result has been produced, for example a man has died or a building has been burned; and (2) that some person is criminally responsible for the act. It has been said that the cor-

That the acts charged in Counts 2, 3, 4, and 5 were committed by someone, and that a criminal agency was involved, cannot be disputed, nor is the proof thereof dependent upon any admission, or confession, made in this case by appellant.

■ Antecedent to an inquiry as to whether or not a sufficient compliance with the general rule in reference to the proof of the corpus delicti in conspiracy cases was followed by the Court below, it is appropriate that the general rule be stated, viz.: A conviction of conspiracy may not be sustained solely on an admission, or confession, of the accused unless such admission or confession is corroborated by independent evidence of the corpus delicti.[2]

■ There is evidence in the record that seems to establish the existence of a conspiracy between two or more persons in reference to the still and its illicit operations, to wit: (a) The barn belonged to Mrs. Carkhuff, an alleged conspirator, and the Carkhuffs knew that liquor was being manufactured in that barn. (b) Raymond Carkhuff, another conspirator, not only knew of the still but of the place where the key to the barn was hidden. (c) The same facilities that supplied water and electric current for the Carkhuff residence were utilized in supplying water and electric current for the manufacture of liquor in the Carkhuff barn. (d) Pawlowski, another alleged conspirator, had set up the still and made repairs from time to time and was arrested at or near the barn where he had placed it.

The foregoing facts, irrespective of any admissions by accused, were sufficient to justify the jury in concluding that there was a common understanding, or agreement, attended by overt acts, at least between Mrs. Carkhuff, her son Raymond, and Pawlowski. Moreover, these facts and circumstances were sufficient proof of the existence of the corpus delicti to serve as a predicate for the receipt in evidence of the admissions by the accused. And since such full and complete proof is not required, but only that admissions be corroborated by independent evidence, it can hardly be disputed that these proven facts supply sufficient corroboration to lay the predicate for receiving the admissions in evidence.

In examining the pertinent features of the evidence for the purpose of ascertaining whether or not they were sufficient to support the jury's finding that the appellant was a member of the conspiracy, we note: (a) That appellant had turned his automobile in, and had stopped, at a spot eight or ten feet from the barn that housed the still and that he was arrested as he was preparing to open the door of his car, although he had not located either the debtor, Pawlowski, or his automobile. (b) That he came into the Carkhuff farm stealthily, having extinguished the driving lights before turning into the Carkhuff lane. (c) That he was able to come into the premises in question in the night with his lights out, thereby exhibiting an apparent familiarity with the road and the premises. (d) That his coming in the night with his driving lights extinguished supports an inference that he was seeking to enter without attracting attention or arousing suspicion and that his purpose was not that of a man merely seeking to collect an honest debt from a slow-paying debtor. [The foregoing features of appellant's conduct were cumulative and competent evidence for the consideration of the jury on the question of the existence of a conspiracy, or as direct and corroborative evidence of the existence of the corpus delicti, and as a predicate for the receipt of his admissions in evidence.] (e) That when arrested by the officers appellant said: "All right, you got me. Let's get it over with." (f) That later, when asked if that was not the first time he had ever come into one of his stills, he answered: "Yes, God damn it, this is the first time. I ought to have my head examined." (g) That appellant remarked to Officer Cirone: "Well, I guess that is another feather in your hat." (h) That he commented to Officer Lurie: "Let us go. There won't be any more men here tonight."

The statements, or admissions, in paragraphs (e), (f), (g), and (h) were corroborated by facts and circumstances which tended to show the existence of a mutual

pus delicti consists of the facts that a crime has been committed and that the defendant was implicated in the crime. This definition, however, is inaccurate, since if true, all that would be necessary to convict of a crime would be to prove the corpus delicti."

[2] Naftzger v. United States, 10 Cir., 200 F. 494; Tingle v. United States, 8 Cir., 38 F.2d 573; Martin v. United States, 8 Cir., 264 F. 950; Oldstein v. United States, 10 Cir., 99 F.2d 305; Anderson v. United States, 6 Cir., 124 F.2d 58, 65; Flower v. United States, 5 Cir., 116 F. 241.

understanding and agreement to do the illegal things alleged in the conspiracy count of the indictment and that appellant was a participant therein. Whether or not any or all of these statements were admissions as well as the inferences to be drawn therefrom and the effect to be given thereto were questions for the jury.

The corpus delicti, as well as the existence of a mutual understanding or a partnership in an illegal venture, may be proven by circumstantial evidence, and in the light of proven facts and the admissions of the defendant we conclude that the verdict was supported by competent and sufficient evidence to sustain it.

The judgment of the Court below is, therefore, affirmed.