KENNETH P. INGRAM, Circuit Judge.
Appellant was convicted of robbery and sentenced to fifteen years in the penitentiary. Counsel was appointed at the arraignment. His counsel represented him at the arraignment and throughout his trial. The appellant’s plea at arraignment was not guilty and not guilty by reason of insanity.
After conviction, the Court appointed his trial counsel to represent him on appeal and ordered a free transcript of appellant’s trial.
The facts of the offense were not in conflict. They were stated in the victim’s testimony.
The victim was Bobby Jean McNutt. She testified that some few minutes before 11:00 p. m., on November 6, 1974, she was robbed at her place of employment at Billy’s Mini Market in Decatur, Morgan County, Alabama. She was working as a clerk at the cash register at the time the robbery occurred. She testified that the man who robbed her was wearing a blond “afro” wig and that his face was blackened. He had a brown paper sack in his right hand and a gun in his left hand. He walked into the store, approached Mrs. McNutt and ordered her to open the cash register and put the money into the sack. He told her that if she did not, he would blow her brains out. She did as she was told. She placed the money in the sack. He told her to lift the tray in the cash register and give him the money under there. She told him there was nothing there but checks. He then ordered her to turn around and walk toward the back of the store and not to look around. The robber then left the store. Mrs. McNutt immediately called the Decatur Police.
She testified that she could not identify the robber and that all she could remember about the robber was that he had a gun, was wearing a blond “afro” wig and his face was blackened. She could not identify the defendant, William Jimmy Smith, as the man who robbed her.
Detective Wayne Kyker of the Decatur Police Department testified that shortly before 2:00 a. m., on November 8, 1974, the defendant, William Jimmy Smith, was arrested at his residence which is located at 1101 10th Avenue, Southeast, in Decatur, Morgan County, Alabama. The arrest was made by officers of the Decatur Police Department. Appellant was taken to the police department. At approximately 2:10 a. *891 m., on this same day, Detective Kyker advised appellant of certain constitutional rights prescribed by the United States Supreme Court in the case of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. He read the following statements to the defendant concerning these rights:
“Before we ask you any questions, you must understand your rights.
“You have the right to remain silent. “Anything you say can be used against you in Court.
“You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
“If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.
“If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
“A lawyer will also be provided for you now, if you wish.”
The printed form used by the officer contained a waiver of these rights.
Detective Kyker testified that appellant refused to sign this waiver. He stated that appellant said he understood the rights read to him, but he said he didn’t want to sign the waiver. He did not at any time ask to see a lawyer. He never said that he did not wish to make a statement.
He testified that neither he nor anyone in his presence threatened, coerce.d, intimidated or offered any reward or hope of reward to appellant in order to get him to make a statement.
The State offered appellant’s statement. At his point, the Court excused the jury in order to conduct a voir dire examination of this witness and other witnesses outside the presence and hearing of the jury so as to determine the voluntariness of his statement.
On voir dire, Detective Kyker testified that after appellant refused to sign the waiver of his rights form, that he and appellant started talking. They talked about some general matters and then they talked about robberies that had occurred in the Decatur area.
It is not clear whether appellant gave his oral statement of his involvement in the robbery to Detective Kyker during the early part of their conversation about robberies or after this conversation. Kyker stated that he told appellant at approximately 2:30 or 2:45 a. m. that two young women, Cynthia Keel and Margaret Jones, were in custody. Cynthia is appellant’s girl friend and Margaret Jones is his former wife.
They were soon after brought to the room where Kyker and the appellant were talking. His testimony indicates that the women were shown to appellant before his statement was reduced to writing by Detective Kyker. He also testified that appellant admitted his involvement in the robbery in this case before the women were brought in for appellant to see.
He testified that neither he nor anyone else told appellant that if he would sign a confession that these two women would be released. He also stated that appellant never said, at any time, that he did not want to talk to the officers anymore. Appellant did tell Detective Kyker at one time during their conversation that he was undecided about a statement and that he didn’t know what to do.
Appellant’s statement was completed at approximately 3:30 a. m. and reduced to writing by Detective Kyker. It was then read to appellant and handed to him for him to read. After hearing his statement read to him and reading it himself, appellant signed it. This was at approximately 4:45 a. m., on this same day.
Appellant was then called by his counsel to testify on voir dire as to the voluntariness of his statement and as to his consent to search his apartment.
He testified that he refused to sign the waiver of his rights, and he told the officers that he didn’t want to make a statement. He further testified that Cynthia Keel is his *892 girl friend and Margaret Jones is his former wife. He further testified that Detective Kyker told him that the two women had been booked for robbery. He told them he did not believe it. It was at this time that the officers brought Cynthia and Margaret into the room where appellant was with Detective Kyker.
Appellant stated that he was signing something at the time the two women were brought into the room with him and Detective Kyker. After he signed the statement, he also signed a consent to search the apartment where he and Cynthia Keel resided. He said the officers told him they would not release Cynthia and Margaret until he signed the consent to search the apartment. Appellant said the officers also told him that he had to sign the consent to search or they would get a search warrant. Appellant testified that the signature on the consent to search was his.
Appellant stated that during some of this discussion with Detective Kyker a young police officer walked into the room, pulled a pistol from his holster and told appellant that he could have been killed to which appellant said he replied, “Really?” He further testified that the officers told him that they had other ways of getting confessions out of people. He told the officers he did not want to waive his rights or make a statement.
During cross examination by the State, appellant could not recall whether or not he testified at a previous trial of this case that he had been threatened or coerced by the police.
Cynthia Keel testified on voir dire that a lot of threats were made to her when she was first arrested. She said the officers told her the appellant had signed a confession and that it was all right for her to sign a consent to search form for police to search her apartment. She testified that she was told by the officers that if .she did not sign the consent to search she would have to remain in custody until a search warrant was obtained by the police. The State’s testimony on this point is in contradiction to that of the witness. Cynthia Keel gave her consent to search and signed the form. She was released from custody and she drove her automobile to the apartment and was present when the officers searched her apartment.
Further testimony on voir dire by Detective Kyker was that Cynthia signed the consent to search form in his presence and that he did not threaten, coerce, intimidate, offer any reward, or hope of reward to her to get her to sign the consent to search the apartment which she shared with appellant. He also stated that he did not tell her that she and Margaret Jones would be released from custody if she signed the consent, or that they were being detained until a search warrant could be obtained.
The voir dire examination of all the witnesses was lengthy and interspersed with conflicting statements. At the conclusion of the voir dire, the court ruled that the statement of the appellant was sufficiently voluntary to be admitted into evidence for consideration by the jury. The court returned the jury to the courtroom. The court admitted into evidence that portion of appellant’s statement which was his confession to the robbery of Billy’s Mini Market. All references to other robberies were excluded by the court from the six page statement. The court accomplished this by allowing a photographic copy of the statement which excluded all parts of the statement which were not related to the subject of the indictment in this case. This was done after the court examined the original statement. Appellant’s admitted statement is as follows:
“Voluntary statement, under arrest, date, 11-8-74; time, 3:25 a. m.; place, Decatur Police Department. I, William Jimmy Smith, am twenty-three years of age and my address is Route 1, Box 281, Decatur, Alabama. I have been advised and duly warned by Wayne Kyker, who has identified himself as a Detective with the Decatur Police Department, of my right to the advice of counsel before making any statement, and that I do not have to make any statement at all, nor incriminate myself in any manner. I hereby *893 expressly waive my right to the advice of counsel, and voluntarily make the following statement to the aforesaid person, knowing that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I declare that the following statement is made of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.”
“On November 7, 1974 after thinking about it for several days I decided to rob Billy’s Mini Market. I got an Afro wig and some bronze makeup that I had bought for the reason of darkening my face. I put the makeup on and the wig on and left the house. I walked down the alley beside Billy’s so I could see when there wasn’t anybody there. After about five minutes there wasn’t anyone there so I took the gun out of the paper sack I was carrying and walked across to the front door. I had the gun in my right hand and the sack in my left. I cross my arms so that the people at the traffic light couldn’t see the gun. I told the woman to give me the money out of the drawer and I want the twenties too. I told her don’t try for a gun and you won’t get hurt. She gave me the money and I told her to lift the drawer up and there wasn’t any money under it but she gave me some food stamps and a few checks. I then told her to walk to the back of the store and as she started toward the rear of the store I walked out and after I got to the alley I started running. I then went back to 1101 10th Avenue, Southeast, and counted the money. There was about $440.00. Believe it or not, I have already blew it all. I took some soap and water and washed the makeup off my face.”
“I have read this statement consisting of six of six pages and I affirm to the truth and accuracy of the facts contained therein.”
Presentation of evidence with the jury present was resumed with additional testimony from Detective Kyker. He testified that the consents to search were signed by the appellant and Cynthia Keel at approximately 5:00 a. m. and he, two other officers and the appellant proceeded to the apartment located at 1101 10th Avenue, Southeast, Decatur.
Detective Kyker stated that while in the police car en route to the apartment, the appellant voluntarily made a statement. His statement was that he would bet the officers that they would not be able to find the money and the other items in the apartment. When they arrived at the apartment, the appellant once again made a voluntary statement that he would show the officers the room that the money and other items were in and they still would not be able to find them.
When the search began the officers, appellant and the two women were present. Once again appellant stated, voluntarily, “It’s in the bathroom.” The officers searched the bathroom but failed to find the items. The appellant then walked over and lifted the lid on the commode revealing the items which were the subject of the search. Kyker further testified that no threat, coercion or intimidation was made to appellant, nor was any offer of reward or offer of leniency made to him to get him to make a statement on any of these occasions either while in the police ear or in the apartment.
At this point in the trial, the consent to search forms signed by Cynthia Keel and the appellant, William Jimmy Smith, were allowed into evidence.
The officer’s search of the apartment revealed a gray box in the bedroom containing paint accessories. It also revealed a plastic bag in the commode and inside the bag they found $1192.00 in cash, $322.00 in cash stuffed into a red wallet. The wallet bore Cynthia Keel’s name. They also found a .38 caliber Smith and Wesson blue steel revolver and 6 rounds of .38 caliber ammunition. On top of these items they found a brown “afro” wig. They found checks and *894 food stamps in a brown paper bag in the kitchen. The paper bag contained $148.50 in food coupons and $127.16 in insufficient fund checks. There were 18 checks in all. The checks were made payable to Billy’s Mini Market. After these items were admitted into evidence by the court, the State offered a pillow case. It was also found in the apartment. The court refused to admit the pillow case and promptly instructed the jury that it was not in evidence that they could not consider it.
Appellant’s first contention is that the trial court erred in allowing appellant’s confession admitted into evidence. We do not agree. Our evaluation of the evidence on this point is in accord with the trial court. The trial court heard and considered the evidence presented by both sides of the case. There appears no inference from the evidence that appellant was mistreated. Nor was he placed in a state of fear as to coerce him into making a statement. This seems clear to us as it obviously did to the trial court who had greater opportunity to evaluate the testimony and the weight he would give to it. He is entitled to consider the conduct and demeanor of the witnesses in his assessment of the evidence. In this regard, he is both judge and jury. He matches the facts with the law and his resulting determination of the question of the voluntariness of the confession and the consent to search is entitled to great weight on appeal and will not be disturbed unless it appears to be contrary to the great weight of the evidence or unless manifestly wrong. Vernon v. State, 239 Ala. 593, 196 So. 96; Fewell v. State, 259 Ala. 401, 66 So.2d. 771.
Appellant’s next contention is that the trial court committed error to reversal by admitting articles recovered as a result of a search consented to by Cynthia Keel.
While we agree that there is conflict in the testimony of Detective Kyker and Cynthia Keel, we cannot hold that the trial court was in error in his finding that the consent to search was voluntary. The United States Supreme Court has held that the voluntariness of a consent to search is a question of fact to be determined by the trial court. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. We believe there was substantial evidence to support the trial court’s holding that the consent to search was voluntarily given.
The next contention of appellant is that the trial court erred in admitting a photographic copy of only a portion of the appellant’s statement. This Court previously addressed itself to the question of the admission into evidence of offenses contained in a defendant’s statements other than the offense for which that defendant was being tried, and we held that under the evidence in the case, it must be excluded. William Jimmy Smith v. State, 56 Ala.App. 384, 321 So.2d. 724. The evidence in the instant case shows that the trial court had the original statement before it; that the statement contained references to other offenses not admissible here, and that the trial court properly allowed only those portions of the statement involved in the instant case to be admitted into evidence. All else was excluded from the jury by its being removed from the admitted copy.
Appellant claims the trial court committed error in allowing evidence of prior offenses to be admitted into the evidence in this case. We conclude, after consideration of the record here, that no clear reference of prior offenses is presented; therefore, this claim is without merit. It is true that the State attempted to introduce a pillow case; however, the trial court sustained appellant’s objection to the offer of this item and promptly and adequately instructed the jury not to consider it as part of the evidence.
Our review of the record pursuant to the provisions of Title 15, Section 389, Code of Alabama, 1940, fails to reveal any prejudicial error therein.
The foregoing opinion was prepared by Honorable KENNETH F. INGRAM, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of Section 38, Title 13, Code of Alabama, 1940, as amended. The Court has adopted his opinion as its own.
*895 The judgment below is hereby
AFFIRMED.
All the Judges concur.