# Winslow *v.* The State.

### *Indictment for Arson.*

1. *Sufficiency of confessions, without proof of corpus delicti.*—In a criminal case, a conviction can not be had on the extra-judicial confessions of the defendant, without proof *aliunde* of the *corpus delicti;* but direct and positive proof of that fact is not indispensable.

2. *Same; province of court and jury.*—The sufficiency of the proof of the *corpus delicti* is not a question of law for the decision of the court, but a question of fact for the jury to decide; and while the court must decide in the first instance, whether the evidence adduced is *prima facie* sufficient to go to the jury, the jury are not bound to hold it sufficient because the court has admitted it.

3. *Arson; what is corpus delicti.*—In a prosecution for arson, the *corpus delicti* is not the fact that a house was burned down, but that it was burned by the willful act of some person criminally responsible for his acts, and not by natural or accidental causes.

4. *Same; sufficiency of preliminary proof.*—Evidence showing that the fire occurred about midnight, at a part of the house in which no fire had been used during the day or night, and, when first discovered, was burning on the outside of the house; and that a fresh track was discovered the next morning, in a lane leading from the public road to the house, which track corresponded with the defendant's, is *prima facie* sufficient proof of the *corpus delicti* to render the defendant's confessions admissible as evidence.

5. *Defendant's threats and declarations; when admissible as evidence against him.*—The defendant's threats, or declarations in the nature of threats, before the commission of the offense charged, are admissible as evidence against him.

6. *Evidence tending to show motive; proof of collateral fact.*—If there was a controversy between the defendant and the occupants of the house burned, as to the ownership of the property, and it was shown that the defendant knew the occupants had a certificate of entry for the land, which certificate was in the house at the time of the alleged burning; proof of these facts would be admissible, as tending to show a motive for the burning; but the fact being only collaterally and incidentally in issue, it would not be necessary to prove the entry by a certified transcript.

[Winslow v. The State.]

7. *Charges asked and refused ; when revisable.*—The refusal of charges asked, which are not shown to have been asked in writing, is not a reversible error; but, where the clerk certifies that the charges are on file in his office, and are marked *Refused* in the handwriting of the presiding judge, this makes them a part of the record (Code, § 3109), and enables this court to revise their refusal, although the bill of exceptions does not state that they were asked in writing.

8. *Charge on sufficiency of evidence.*—A charge asked, which asserts that if, from the evidence, there is a probability of the defendant's innocence, he is entitled to an acquittal, asserts a correct legal proposition, and its refusal is error.

9. *Polling jury.*—The statute secures to the defendant, in a criminal case, a right to poll the jury (Code, § 4920), in order to ascertain whether the verdict is unanimous; but, in polling them, inquiry can not be made into their several reasons or motives for assenting to the verdict.

FROM the Circuit Court of Pike.

Tried before the Hon. JNO. P. HUBBARD.

The indictment in this case charged that the defendant, Charles Winslow, " willfully set fire to or burned, in the night-time, a dwelling-house of Fred. Collins and Newberry Collins, in which there was at the time a' human being." Issue was joined on the plea of not guilty. On the trial, a bill of exceptions was reserved by the defendant, which purports to set out " substantially all the evidence in the case, so far as necessary to show the points reserved." It was proved that the house burned belonged to Fred. and Newberry Collins, with their sister Fanny, all of whom lived in it; and that it was destroyed by fire on the night of the fourth Saturday in June, 1883. The house was thus described by said Fred. Collins, the first witness introduced by the prosecution : " The house was situated on the west side of the public road, and there was a lane, about thirty feet wide, leading from the road up to within a few yards of it. The main room was fronting the road, and was built of logs, and had a chimney in the north end. On the back of this room there was a shed room, built of planks, with a door entering it from the front room. This room was used as a bed-room, and its roof was lower than the front room. At the north end of the shed room was another room, built of logs, with a chimney on the north, built of sticks and dirt; and these two rooms were connected by a door." Fred. Collins and his sister slept in the house the night on which it was burned, occupying two beds in the front room. He testified, that he retired about nine o'clock that night, leaving his sister still sitting up, with a lamp burning; that he was aroused by his sister between twelve and one o'clock, and found the house on fire; " that the fire was burning on the south end of the front room, near the south-west corner, and was entirely on the outside ; that he saw it through the cracks in the wall ; that it seemed to commence about six feet from the ground, on the

outside, and the blaze extended to the boards on the roof;" that the roof of the shed-room soon fell in, and the entire house was consumed; that there was no fire in either of the chimneys that night, and the family ate a cold supper. He testified, also, that it rained that night, slowly, "until about eleven o'clock;" that he found, on the next morning, "a bare-foot track in said lane, near the road, and on the south side of the lane; that there were two tracks, that of the left foot being heavier on the outside; that he measured the length of the other track; that there was sand on the grass in the lane, having the appearance of being left there by some person's feet;" and that after the defendant's arrest, several weeks subsequent to the fire, being required to make his track in the sand, it corresponded in length with the measure so taken. At this point in the examination of the witness, the prosecuting attorney asked him, "if he had in the house a paper purporting to be a certificate of entry to his father from the United States, and if it did not get burned in said fire; to which question the defendant objected, for irrelevancy, and because there was higher evidence;" and he reserved an exception to the overruling of his objections. "The witness answered, that there was such a certificate in the house, and it was burned up in the fire. It was in evidence, also, that such a certificate had been held by the father of said Collins, and that it was burned up in the fire; also, that the defendant set claim to the forty acres on which the house was situated, and had procured a certificate of entry to it from the Government, and controverted the said Collins claim; and that there was a contention as to who legally owned the land."

Miss Fanny Collins, the next witness introduced on the part of the State, testified substantially as her brother had, as to the discovery of the fire, and the circumstances attending it; and she further stated, that there was no fire in the house later than twelve o'clock in the day—that she did not cook supper that night, but made coffee on the live coals left in the fire-place, and lighted the lamp from the coals; that she did not smoke a pipe just before going to bed that night, as was her habit at times; and that she had not made any contradictory statements, as to these matters, to John Lane and others. Newberry Collins was also examined as a witness on the part of the State, and testified as to the measurement of the track on the morning after the fire, and its correspondence with the track subsequently made by the defendant; but he stated, on cross-examination, that he left the house on foot, at nine o'clock on the night of the fire, through the lane, and returned on foot the next morning; and in this statement he was corroborated by his sister,

[Winslow v. The State.]

while Fred. Collins swore that he went and returned on horse-back.

The State then introduced one Siler as a witness, who testified to threats, or declarations, which he had heard the defendant make in June, 1883, a few weeks before the house was burned, to this effect: "*The Collins boys haven't got Jim Winslow to fool with now,*"—it being shown that said Jim Winslow had set up a claim to the land on which the house was built, but had afterwards abandoned his claim; and, "*Their papers shant cut against mine.*" The defendant objected to the admission of this evidence, "because the same was irrelevant and illegal, and because the *corpus delicti*-had not been proved;" and he excepted to the overruling of his objections. One Andrew Carlisle, a freedman, was afterwards introduced as a witness on the part of the State, and testified that, in April, 1884, while he and the defendant were working together, the defendant "admitted to him that he had burned the house, and said that he took a gourd of kerosene oil, and went to the back end of the house that night, and '*gave a spill-throw, and touched a match to it, and it went hellwards.*'" The defendant made the same objections to the admission of this evidence, and duly excepted to the overruling of his objections. Other confessions and inculpatory declarations, said to have been made by the defendant subsequently to the burning of the house, were admitted in evidence against him by the court, against similar objections, and exceptions were duly reserved by him to their admission.

John Lane, a neighbor, who first reached the house on the night of the fire, was introduced as a witness by the defendant, and testified that, "while he was approaching, and when he got to the house, the whole of the cook-room was burning, and the top of the shed and the front room was burning; that he asked Miss Fannie Collins, after he had been there awhile, how it caught on fire; and that she replied, that she did not know, and that she cooked supper that night, and smoked her pipe before going to bed." This conversation, the witness said, was had in the presence of Fred. Collins; but Fred. Collins and his sister, each, being interrogated, denied that she had made any such statements. The witness further stated "that he went to the fire bare-footed, and passed through the lane in a run;" while Fred. Collins had testified, that said Lane "was wearing shoes when he came to the fire." Another witness for the defendant testified, that while he was at the place, on the day after the house was burned, "he asked Miss Fannie Collins, how the house came to be burned; and that she replied, '*she did not know—that she was lying on the bed smoking that night, and went to sleep with the pipe in her mouth, and when she*

[Winslow v. The State.]

*awoke the house was on fire, near the bed, and it might have caught from her pipe.*" This conversation was said by the witness to have taken place in the presence of Fred. and Newberry Collins, and it was denied by each of them. " After all the evidence was closed, the defendant again moved the court to exclude from the jury as evidence all declarations or confessions made by him, on the ground that the *corpus delicti* had not been proved ;" and he duly excepted to the overruling of his motion.

The defendant asked numerous charges to the jury, which are not stated to have been asked in writing ; but, after the submission of the cause in this court, and after the court had delivered an opinion affirming the judgment, and refusing to consider the charges refused, because the bill of exceptions did not show that they were asked in writing, the appellant submitted the affidavits of his attorney and the clerk of the court, to the effect that the charges were asked in writing, were marked *Refused* by the presiding judge, and were on file in the clerk's office. One of the charges was in these words : " 5. If there is a probability of the defendant's innocence from the evidence, the jury must acquit the defendant." An exception was duly reserved to the refusal of each of the charges asked.

The jury having retired to consider of their verdict, as the bill of exceptions further shows, and having returned into court on the next day with their verdict, " the defendant asked that the jury be polled, and it was done ; when one J. D. Smith, one of the jurors, being asked, ' *Is this your verdict,*' answered, ' *Not exactly.*' The court then instructed the jury to retire again to consider their verdict ; to which the defendant objected," and he excepted to the overruling of his objection. " The jury again returned into court, with the same verdict, and the defendant again asked that they be polled, which was done. Said Smith, being asked, ' *Is this your verdict ?*' answered, ' *I agree to it.*' The defendant objected to the verdict being received, and asked the court to require said Smith to answer *Yes, or No* ; but the court refused to permit the juror to be further interrogated, and the defendant excepted."

M. N. CARLISLE, and PARKS & SON, for the appellant, cited *Matthews v. The State*, 55 Ala. 187 ; Burr. Cir. Ev. 119–20, 722–3 ; Code, § 4910.

THOS. N. McCLELLAN, Attorney-General, for the State.

CLOPTON, J.—The American authorities, generally, maintain the principle, that a conviction should not be had on the

extra-judicial confessions of the defendant, unsupported by any corroborating facts and circumstances : proof *aliunde*, of the *corpus delicti*, is required.   Our decisions are in harmony with this rule.— *Mose v. State*, 36 Ala. 211 ; *Matthews v. State*, 55 Ala. 187 ; *Johnson v. State*, 59 Ala. 37.   While great caution, founded on experience in the administration of the criminal law, should be observed, that a person charged may not be punished for an alleged crime not actually committed, direct and positive evidence of the *corpus delicti* is not indispensable. Like any other fact, the subject of judicial investigation, it may be proved by circumstantial evidence.—*State v. Keeler*, 28 Io. 551 ; *State v. Davidson*, 30 Vt. 377 ; 1 Bish. Cr. Pro. § 1057 ; 3 Greenl. on Ev. § 30.

We can not assent to the proposition insisted on, that the sufficiency of the proof of the *corpus delicti* is a question for the court, and not for the jury.   Greenleaf, in the section cited, observes : " The proof of the charge, in criminal causes, involves the proof of two distinct propositions : first, that the act itself was done ; and, secondly, that it was done by the person charged, and by none other—in other words, proof of the *corpus delicti*, and of the *identity of the prisoner*." The ascertainment that an offense has been committed, is as essential to conviction, as that the defendant is the guilty agent.   Both of these essential propositions are for the determination of the jury, and both must be proved beyond a reasonable doubt.   To hold that the court must decide ultimately either of these propositions, would be tantamount to a denial of the constitutional right of trial by jury.

In *Matthews v. State, supra*, no evidence was offered by the prosecution, other than the uncorroborated confessions of the defendant ; and, as on these alone a conviction should not be had, it was held that they should have been excluded.   Some preliminary testimony, tending to show the *corpus delicti*, should precede the admission of the confessions.   The sufficiency of the preliminary proof of the voluntary character of a confession, which the law requires, is that it appear, *prima facie*, that the confession was voluntary.—*Mose v. State, supra* ; *King v. State*, 40 Ala. 314.   And to render the acts, declarations and conduct of each person, in promotion of, and in relation to the purpose of a conspiracy, admissible against a co-conspirator, " a foundation must be laid, by proof sufficient, in the opinion of the presiding judge, to establish, *prima facie*, the existence of such conspiracy."—*McAnally v. State*, 74 Ala. 9. It is the province of the judge to determine, whether there is testimony sufficient to make it appear, *prima facie*, that a crime has been committed.   The evidence on which the judge acts, may not necessarily establish the *corpus delicti*.   It may

[Winslow v. The State.]

be, and often is, conflicting and contradictory. In such case, the credibility of the witnesses, and the sufficiency of the entire evidence, are for the ultimate decision of the jury. In arson, the *corpus delicti* consists, not alone of a building burned, but also of its having been willfully fired by some responsible person. Burning by accidental and natural causes must be satisfactorily excluded, to constitute sufficient proof of a crime committed. This *degree* of proof, though requisite to a conviction, is not, however, antecedent and necessary to the admissibility of confessions.

In this case, there was evidence tending to show a fresh track in the lane leading from the road to the house; that this track, and the track of the defendant, corresponded; that the fire, when first discovered, was burning on the outside, about six feet from the ground, at a part of the house in which there had been no fire during the night; that the fire occurred about midnight, and spread so rapidly that only one bed and bedding were saved. While there was some conflict in the testimony, and there was evidence tending to show that the burning may have been accidental, the evidence tending to show the *corpus delicti* is sufficient to lay a foundation on which to rest the admissibility of the confessions.

The previous threats of the defendant, and his declarations in the nature of threats, were, on the same principle, properly admitted. While they are not, of themselves, convincing of guilt, from them, in connection with the other circumstances, if believed by the jury, guilt may be a logical sequence.

The certificate of entry was collaterally and incidentally in issue, and was shown to have been burned. Its real existence was immaterial. If there was a controversy in respect to the entry and ownership of the land, and the defendant was previously informed and believed that the occupants had a certificate of entry in the house, such evidence is admissible, and may be considered, as tending to show a motive.— *Woods v. State*, at the present term; *ante* p 35. For this purpose, a certified transcript of the certificate is not requisite.

On the record, as first certified, we could not consider the charges asked by the defendant, and refused by the court, because the bill of exceptions did not show they were in writing. The clerk has certified, that the charges copied in the bill of exceptions are in writing, and on file in his office, and each is indorsed *Refused* by the presiding judge. This made the charges a part of the record.— *Mobile Sav. Bank v. Fry*, 69 Ala. 348.

In *Bain v. State*, 74 Ala. 38, it was held, that a charge requested, in these words, "A probability of the defendant's innocence is a just foundation for a reasonable doubt of his

[Phelan v. The State, ex rel. Rosenstok.]

guilt, and, therefore, for his acquittal," asserts a correct legal proposition, and its refusal will work a reversal of the judgment. *Williams v. State*, 52 Ala. 411, which asserts a contrary rule, was overruled. The fifth charge requested by the defendant, which asserts, if there is from the evidence a probability of the innocence of the defendant, he is entitled to an acquittal, should have been given. The other charges are either in conflict with the rules we have above stated, or, from their phraseology, are calculated to mislead.

Section 4920 of Code provides: "When a verdict is rendered, and before it is recorded, the jury may be polled, on the requirement of either party; in which case, they must be severally asked, if it is their verdict; and if any answer in the negative, the jury must be sent out for further deliberation." The law secures to the defendant a unanimous verdict, and polling the jury is the means provided by the statute of ascertaining that each juror agrees to the verdict. The motives which influenced, or the reasons that governed the juror, can not be inquired into. The statute authorizes the jury to be sent out for further deliberation, only when one or more answer in the *negative*. The answer of the juror expressed his agreement to the verdict, and thus it was shown to be the joint verdict of the entire jury.—*State v. John*, 8 Ired. 330.

For the error mentioned, the judgment is reversed, and cause remanded.