# Wilson *v.* The State.

## *Murder.*

(Decided January 14, 1915.   67 South. 1010.)

1. *Homicide; Evidence.*—Where a defendant was prosecuted for murdering his wife who was last seen entering the house where defendant lived, having a baby in her arms, evidence of the finding three years thereafter, about a mile and a half from defendant's house, of two skeletons, one that of an adult, and the other, that of a small child, with testimony as to the condition and position in which the skeletons were found, was relevant and competent.

2. *Witnesses; Examination and Cross; Scope.*—Where a witness stated on direct examination that he did not know defendant's wife, and had seen her only once since she was a child, but testified to the finding of certain bones, it was not error to sustain an objection to the question propounded on the cross, whether, in his judgment, the teeth that were found, were those of defendant's wife.

3. *Homicide; Evidence; Declarations by Accused.*—Where it has been shown that defendant's wife and baby had disappeared at the same time, and that the skeletons of an adult person and a small child were found together, evidence that defendant, when he picked up a bone of the small skeleton, stated: "Here is the baby's rib.

You had better take this one," was not objectionable as illegal, irrelevant and immaterial.

4. *Same.*—Where a witness for state had testified to finding certain signs and tracks on the farm of defendant's father, the day after defendant's wife disappeared, the fact that he was on the farm hunting some hogs of his was not objectionable as a statement of a conclusion or intention of the witness.

5. *Same.*—Where defendant is being prosecuted for the murder of his wife, evidence that he and his wife had separated, and that the two oldest children were living with him, was relevant and competent.

6. *Same.*—Incriminating statements by a defendant are admissible when voluntarily made.

7. *Same; Instructions.*—In a prosecution for homicide, an instruction to the jury not to consider anything except facts, was properly refused.

8. *Same.*—A charge asserting that the jury are not concerned about the moral uplift of the community, and are not there to set example, but to try the case according to the evidence, and let consequences take care of themselves, was argumentative and properly refused.

9. *Same.*—A charge asserting that the mere fact that the deceased met her death violently, is no evidence against defendant, was properly refused.

10. *Criminal Law; Verdict; Return for Correction.*—Where the jury returned a verdict, "we, the jury, find the defendant guilty of murder in the first degree, as charged in the indictment, and fix his punishment by imprisonment in the penitentiary for life," it was not error for the court to have the jury correct the verdict by substituting for the last sentence, the words, "and we fix his punishment at imprisonment in the penitentiary for life."

APPEAL from Blount Circuit Court.

Heard before Hon. J. E. BLACKWOOD.

Bill Wilson was convicted of murder in the first degree, and he appeals. Affirmed.

The verdict as returned was as follows: "We, the jury, find the defendant guilty of murder in the first degree, as charged in the indictment, and fix his punishment by imprisonment in the penitentiary for life."

The court remarked: Your verdict is not in exact form. You should say: We, the jury, find the defendant guilty of murder in the first degree, as charged in the indictment, and we fix his punishment at imprisonment in the penitentiary for life.

The jury retired and returned the latter verdict properly signed. The defendant, before the jury retired for the last time, then and there excepted to the action of the court in thus charging the jury.

The charges refused are as follows: (11) You are not to consider anything, except facts in this particular case.

(12) You are not concerned about the moral uplift of this county or any other county, and you are not here to set examples, you try this case according to evidence and let consequences take care of themselves.

(14) The mere fect that Jennie Wilson met her death violently is no evidence against defendant.

RUSSELL & JOHNSON, for appellant.

W. L. MARTIN, Attorney General and T. H. SEAY, Assistant Attorney General, for the state.

GARDNER, J.—The appellant was convicted of the murder of his wife, Jennie Wilson, and his punishment fixed by the jury at imprisonment in the penitentiary for life.

The state relied upon circumstantial evidence both as to the fact that Jennie Wilson was murdered and as to the guilty party. The only questions argued by counsel in brief relate to objections and exceptions as to the admissibility of evidence.

There was evidence introduced by the state to show: That defendant and his wife had separated, and that defendant had gone to the home of his father and had the two older children with him. That his wife was left with the younger child, a baby some 19 months old. That after the separation, some time in the fall of 1908, she was seen with her baby and a basket on her

arm, going into the home of defendant's father, where defendant was then living with his two children, and that this was the last time she was seen or heard of, in that county.

A witness, one Jim House, testified that he accompanied her as far as the gate on the above occasion, and that he had not seen her since that time.

"In inquiries of fact dependent for their solution on circumstantial evidence, no general rule can be laid down which will define with unerring accuracy what collateral facts are relevant and admissible in any particular case; yet, while it is proper to guard strictly against the undue multiplication of issues, whatever tends to shed light on the main inquiry, and does not withdraw the minds of the jury from that inquiry, by obtruding on their minds matters which are foreign, or of questionable pertinency, is, generally, relevant and competent evidence."—*Mattison v. State*, 55 Ala. 224, first headnote.

(1) The facts, as testified to by witness Dolphus Tidwell and his son, relating to their finding, on the river bank under an overhanging cliff or high bluff, two skeletons of human beings, one that of an adult and the other that of a small child; that these two skeletons were together and were found as if laid down in a sitting position; that they "were covered with rocks and the kind of stuff you find under bluffs, and not much deep, * * * and the bones seemed to be covered in a basket, or cane matting, and it was so rotten that it crumbled;" that at the same time they also found some of the teeth; that this was in 1911; and that the place was about 1½ miles from where defendant lived, and that there was no road or trail there—were clearly relevant and competent.

[Wilson v. The State.]

Numerous objections to questions eliciting the above were properly overruled. A treatment of the objections in detail we deem unnecessary.

(2) It is insisted that there was error in the court's sustaining the objection of the state to the question asked witness A. W. Tidwell on recross-examination: "Will you tell the jury, in your judgment, whether or not those were Jennie Wilson's teeth?" This was on recross-examination, and the witness had just previously stated that he did not know Jennie Wilson, had seen her but one time since she was a child. It is quite manifest that there was no error in this ruling.

(3) Witness House testified to finding some bones under the bluff also, some of which he carried away and identified on the trial, and further testified: "Bill Wilson picked this rib up and handed it to me under the bluff." The state then asked the witness, "State to the jury what he said," and this was objected to by the defendant as calling for "illegal, irrelevant, and immaterial evidence," and the overruling of this objection is insisted upon as error. The witness answered: "He says, 'Here is the baby's rib;' says, 'You had better take this one along.' "

The grounds of objection specified as illegal, irrelevant, and immaterial were clearly without merit.

(4) The witness House, who testified that he accompanied Jennie Wilson to where defendant lived, as previously stated, further testified that the next morning he met defendant in his father's field, and defendant denied his wife had been to the house; and witness further testified to certain tracks that led on a path to a "scramble place," and that he saw some signs of blood and "a cloth that women use with their children." In this connection the witness was asked what he was doing over there, to which he replied that he was hunting

some hogs of his that had gotten into Mr. Wilson's field. This was objected to. There was no error in overruling this objection. It does not call for any conclusion or intention of the witness, as is insisted, but merely for the statement of a fact explanatory of his presence there at that time.

(5) That defendant and his wife had separated, and that he had the two oldest children, the fruits of their marriage, were of course relevant and competent circumstances to be considered by the jury, in connection with all the other evidence in the case.

(6) The statements made by defendant in the two conversations as testified to by witnesses Tate and Rogers, while tending to incrimination, were nevertheless, as shown by the attendant circumstances, the character of the conversations, the relation of the parties to the conversations, and what was said at the time, entirely gratuitous on the part of the defendant, and it sufficiently appears affirmatively that they were voluntarily made.—*Watts v. State,* 177 Ala. 24, 59 South. 270; *Green v. State,* 168 Ala. 90, 53 South. 286; *Bush v. State,* 136 Ala. 85, 33 South. 878; *Price v. State,* 117 Ala. 113, 23 South. 691.

There was no error in overruling the objection of defendant to the above testimony. A review in detail of each objection to testimony, and of each assignment of error, is unnecessary, and would serve no good purpose. Suffice it to say that we have carefully examined each question presented on the evidence, and find no reversible error in the rulings of the court thereon.

(7-9) The refused charges, as well as the exceptions taken to a part of the oral charge, are not argued by counsel as error; but, mindful of our duty in cases of this character, we have also examined these, and we

find nothing in them to merit discussion, and no reversible error.

(10) Nor was there error in the action of the court in having the jury correct their verdict as to a matter of form, as disclosed by this record.

We find no reversible error in the record, and the judgment of the circuit court is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.