25 So.2d 700

## MOSS v. STATE.

### 4 Div. 921.

Court of Appeals of Alabama.

Dec. 18, 1945.

Rehearing Denied Jan. 15, 1946.

J. N. Mullins, of Dothan, for appellant.

Wm. N. McQueen, Atty. Gen., and Mac-Donald Gallion, Asst. Atty. Gen., for the State.

CARR, Judge.

Appellant was charged and convicted of uxoricide. The jury's verdict was murder in the second degree and the imposition of ten years punishment.

At the time of the alleged offense the defendant and deceased had been married slightly over three months, during which time the couple resided alone in a little humble home in a rural community. Their nearest neighbor was Mr. Fears and family, who lived an approximate distance of fifty-five yards.

It appears from the testimony that both the appellant and deceased were recipients of old age pension benefits, and the defendant was the beneficiary of an insurance policy in the amount of $100, payable upon the death of his wife.

The place and date of the alleged murder are fixed in the home of the couple during the early afternoon of June 8, 1944. In the forenoon of this day Mr. and Mrs. Fears, their son, Jess, and Mrs. West—another neighbor—saw the deceased. According to the evidence of each of the above, they had opportunity of close observation, and they did not see any bruises, scratches or other injuries on the face or neck of Mrs. Moss, the deceased.

Mr. Fears stated also that from his residence he was able to see clearly and unobstructedly the home of the appellant and did, in fact, see the defendant going in and out of his home at intervals between noon and about 3 o'clock p. m., at which latter time appellant called witness. Upon his arrival, Mr. Fears found Mrs. Moss dead and lying crosswise a bed in her home. She was dressed in her usual house wearing apparel. Some neighbors, who gathered forthwith, testified that they observed scratches, cuts, and bruises on the deceased's face at first sight of the dead body. The coroner, who came later and before the body was moved or disturbed, gave testimony to like finding. The county health officer saw the deceased that night at the funeral home in Dothan. The doctor testified in part: "There were numerous bruises on the face and on her arms, her forearms, and on the right shoulder, I believe."

The next day, under the personal supervision of the assistant state toxicologist, an autopsy was performed. Enlarged photographs were taken of the face, neck, and arms. They are in the record and bear evidence in corroboration of the various witnesses with reference to the visible injuries.

The county health officer and the toxicologist gave in their testimony a detailed description and full explanation of their discoveries during the process of dissecting the body in question. They stated in part that they found a bruised area on the sides and front of the neck. This disclosure was observed more accurately, they said, after the outer skin had been removed from the involved surface. They found a "balooning of the lungs", which, according to their testimony, is a condition indicative of asphyxiation or lack of sufficient air. It would not add in value to this opinion to go further into the details of this expert evidence as disclosed by the record in the case.

The toxicologist gave as his opinion that death was caused by "manual strangulation and by that term he meant choking." The health officer testified that in his judgment the deceased was "strangulated, and in plain language that means choked, to death."

Appellant admitted while testifying in his own behalf that he was alone with the deceased in their home at the time the latter died. He said that his wife was in poor health and she fell off the bed while suffering from a sudden attack of illness. The defendant accounted, in his testimony, for the injuries to his wife's face, arms, and hands by asserting that she received them when she fell off the bed and when

she scratched her face after applying an excessive amount of alcohol and camphor. He claimed that the blood which was shown by the evidence to be on his shirt was due to the fact that deceased's bleeding face came in contact with his garment when he was in the act of lifting her from the floor to the bed, at the time she fell.

We have given considerable emphasis to the tendencies of the evidence in an effort to make clear our subsequent treatment of the only meritorious questions appearing in the record. With commendable candor, appellant's counsel in brief concedes these queries to be: (1) Was appellant due the general affirmative charge? (2) Was the court below in error in denying the motion for a new trial on the stated ground that the verdict was contrary to the evidence?

It is insisted that the corpus delicti was not proven.

The corpus delicti includes, (1) proof of victim's death, (2) that death was caused by the criminal agency of some person. Shelton v. State, 217 Ala. 465, 117 So. 8; Richardson v. State, 22 Ala.App. 277, 114 So. 789.

Circumstantial evidence may afford satisfactory proof to establish the corpus delicti. Hill v. State, 207 Ala. 444, 93 So. 460; Stewart v. State, 18 Ala.App. 92, 89 So. 391.

If there is any evidence tending to prove the corpus delicti, the sufficiency of the proof is a question for the jury. Driver et al v. State, 18 Ala.App. 261, 89 So. 897; Winslow v. State, 76 Ala. 42.

The jury should consider the directly proven facts together with the circumstances reflected by all the evidence in determining whether or not the corpus delicti has been established by the required proof. Patterson v. State, 202 Ala. 65, 79 So. 459.

If the jury accepted the testimony of the doctor and toxicologist, as was its privilege, an authorized conclusion could have been drawn therefrom that the death of the deceased was caused by the criminal agency of another. The general affirmative charge was not due the defendant in our opinion. Wilson v. State, 191 Ala. 7, 67 So. 1010; Jordan v. State, 225 Ala. 350, 142 So. 665; Ratliff v. State, 212 Ala. 410, 102 So. 621; Shelton v. State, supra.

It is insisted that no motive was shown for the alleged crime. Proof of motive may lend valuable aid to the jury in determining the guilt of an accused and therefore is a material subject of inquiry, but it is not an indispensable element of proof for a conviction in a criminal proceeding. Clifton v. State, 73 Ala. 473; Ward v. State, 182 Ala. 1, 62 So. 703.

We have not overlooked the familiar rule that a person charged with a felony should not be convicted on circumstantial evidence alone, unless it excludes to a moral certainty every reasonable hypothesis but that of his guilt; no matter how strong the circumstances are they do not come up to the full measure of proof which the law requires if they can be reasonably reconciled with the theory that the defendant is innocent. Wilson v. State, 243 Ala. 1, 8 So.2d 422; Tatum v. State, 20 Ala.App. 24, 100 So. 569.

After diligent study of the record in the case at bar and close examination of able briefs filed, we have concluded that no reversible error appears in the refusal of the general affirmative charge in appellant's behalf, nor are we convinced that we should disturb the judgment of the nisi prius court in his action in overruling the motion for a new trial. Blue v. State, 246 Ala. 73, 19 So.2d 11; Russo v. State, 236 Ala. 155, 181 So. 502; Ratliff v. State, supra; Freeman v. State, 30 Ala.App. 99, 1 So.2d 917; Cobb v. Malone, 92 Ala. 630, 9 So. 738.

It is ordered that the judgment of conviction in the primary court be affirmed.

Affirmed.

## On Rehearing

Complaint is made in brief of appellant's counsel on application for rehearing that we did not, in two instances in our original opinion, accurately state the record.

First in this: "* * and the defendant was the beneficiary of an insurance policy in the amount of $100, payable upon the death of his wife." We here set out the testimony of the defendant in reference thereto:

"Q. She had an insurance policy payable to her, didn't she? A. A great beg (sic) one I reckon.

"Q. She had a $100.00 one, didn't she? A. Yes, sir.

"Q. And you had that changed to you, didn't you? A. No sir; she done it.

"Q. And that was payable to her? A. That was to pay for her underwear and her vault with, that's what it was.

"Q. And it was changed then to you? A. Yes, sir.

"Q. And you became the beneficiary? A. Yes, sir."

The second complaint relates to this statement in the opinion: "The next day, under the personal supervision of the assistant state toxicologist, an autopsy was performed. Enlarged photographs were taken of the face, neck and arms. They are in the record and bear evidence in corroboration of the various witnesses with reference to the visible injuries."

The point is taken that as the pictures appear in the record it cannot be detected with the eye that there is evidence of scratches or bruises on the neck. There was expert evidence to the effect that the neck of deceased showed bruised areas, but upon an examination of the photographs, with the aid only of the naked eye, we are unable to say whether or not there appears on the neck evidence of bruises or scratches. It would have been more accurate, therefore, to have stated: "The next day, under the personal supervision of the assistant state toxicologist, an autopsy was performed. Enlarged photographs were taken of the face, neck and arms. They are in the record and, with the exception of the portrayed portions of the neck, bear visible evidence in corroboration of the various witnesses with reference to the injuries."

We do not hesitate to make the explanation and correction.

This, in our judgment, does not in any way affect the conclusions we reached in the original opinion. Upon a further study of the record, we adhere to our views as expressed therein, and the application for rehearing is therefore overruled.

Application overruled.