DeCARLO, Judge.
Arson; 1st degree, four years; five years probation.
Alma McCormick testified that the appellant was married to her mother, Margaret Livingston. She recalled that, on August 12, 1978, she was living in a trailer at 138 *1351 Whitefrost Drive, with her husband and two children, as well as her grandmother, mother and sister, Gina Hall.
According to McCormick, the trailer burned on August 11, 1978, and she had gone to see it after it had burned. Prior to that, she had taken her mother from the trailer to the hospital because her mother had been badly beaten. She stated that her mother “had bruises on her head . arms [and] stomach” and was in a “depression-like . . . state of mind.”
Further, she said that, when she left the trailer to take her mother to the hospital, the lights were on and that the trailer was locked. McCormick also stated that she never personally saw the appellant beat her mother.
During cross-examination, McCormick testified that the appellant was her stepfather and that, on August 11, 1978, he was not living in the trailer with the other seven people. She testified that she had left work about 10:30 or 11:00 P.M., and had taken her mother, who had been drinking that evening, to the hospital.
McCormick stated that, on the night in question, when she went to the hospital with her mother no one was left in the trailer and that her son and her sister were across the street with a neighbor.
Cecil Brindle testified that on August 12, 1978, he lived at 141 Whitefrost Drive in the Carlisle Trailer Park and that the appellant, Kenneth Livingston, lived in the trailer “directly across the street” from his trailer. He stated that he recalled the night in question because the youngest daughter from the Livingston trailer came to his house to use the telephone and that she had called the paramedics.
Brindle said that he and his wife went across the street to see Margaret Livingston who was in her front yard, and stated that she was “real shook up.” At the time, he described her as holding her side and complaining that she was hurt. He said that this occurred at night and that, after the paramedics came, Mrs. Livingston was taken to the hospital by her daughter. He said that he and his wife were asked to keep one of Mrs. Livingston’s grandchildren and her youngest daughter, Gina.
According to Brindle, the appellant drove up to the Livingston trailer about ten or fifteen minutes later. He entered the trailer and went in and out several times. On one of these occasions, he opened his trunk and got something out of the trunk and re-entered the trailer. Brindle said he lived on a dead-end street and that the appellant, at one point, turned his car around so that it would be “facing out.”
Afterwards, the appellant came over to Brindle’s trailer and asked if he could borrow a match. Brindle stated that he gave appellant a match book containing “one or maybe two matches” to light his cigarette.
At that point, the appellant returned to his trailer and stayed for about five minutes. When the appellant came out the door of the trailer, Brindle said he could see “flickering light and he was going out and I ran out and I said hey, the trailer’s on fire.” According to Brindle, the appellant “just walked to his car and started driving off.” At that point, Brindle stated that he got the appellant’s tag number and called for his wife to call the fire department. Brindle added that “the trailer just went up real quick.”
During cross-examination, Brindle said that Mrs. Livingston had been taken away about 11:00 P.M. and that the appellant arrived at the trailer some twenty or thirty minutes later. After borrowing a match for a cigarette, the appellant came out of the trailer on the last occasion, walked across the yard “real slow: and drove away in the same manner.” Brindle stated that he “hollered” at the appellant from across the street, as he was walking to his car, but explained that he did not know whether or not the appellant heard him at that time. Brindle stated that the fire department arrived about 11:40 P.M.
On further testimony, Brindle described the streets of the trailer park as being “not as wide as a regular residential street.
*1352 Gina Hall testified that she was ten years old and that the appellant was her stepfather. She said that she was living at 138 Whitefrost Drive on August 11, 1978, with her grandmother, her mother, and the appellant.
It was Gina Hall’s testimony that on the night in question, she watched the appellant get something out of the trunk of his car and go inside the trailer and then come over to Cecil Brindle’s trailer to borrow a match. She said that the appellant went back and stayed inside the trailer for a “little while.” He then came out of the trailer and was getting into his car when she said she saw the fire. She stated that “[t]he house went up in fire after he got, he was getting into the car.”
During cross-examination she testified that she was now living with her mother and the appellant.
Warren Burroughs was the assistant fire marshal for the City of Montgomery Fire Department and, on August 12, 1978, was the fire investigator. He testified that he investigated the fire at 138 Whitefrost Drive, which involved a “twelve by sixty-five mobile home.”
Burroughs stated that he arrived at the scene shortly after midnight and found that “one end of the trailer was completely gutted.” He said that he went through the full length of the trailer to the bedroom at the other end, where there had been another fire, and explained that there was “no communication from the original fire” on the one end with the bedroom on the other end.
He explained that the fire in the bedroom at the other end of the trailer had only partially burned the bed. The walls, ceiling and floors bore no indication of fire. Further, he said that, in his expert opinion, “[w]e had two separate fires set,” and that he thought “both of them started on the bed.”
During cross-examination, Burroughs stated that he did not find any indication of volatile substances such as gasoline, kerosene or coal oil. He also said he did not find any indication that wiring was connected with the fire.
On further questioning, Burroughs stated that, although he could not find any petroleum products, he did find combustible materials such as bed linens. He also admitted that the trailer contained “a lot of combustible things.”
Howard C. Howell owned and operated Big Deal Mobile Homes in Montgomery, Alabama, and stated that he was acquainted with the appellant and his wife, Margaret Livingston. He testified that he had sold them a used mobile home in May of 1978, for “Sixty-nine hundred plus the tax,” and that they had paid a total of some seven hundred dollars in a down payment. He further testified that Mrs. Livingston had signed the check for the down payment and that he had subsequently sold the sales contract to General Electric Credit in Birmingham. He stated that the sales contract was signed by Kenneth E. Livingston and Margaret Livingston.
During cross-examination, Howell explained that the invoice was in the name of Kenneth E. Livingston and that the conditional sales contract was also in that name.
On further questioning, he stated that the contracts required the husband and the wife to sign. Further, he said he had Kenneth E. Livingston’s name only appear at the top of the contract, but that both husband and wife had signed at the bottom.
At that point, a discussion was held outside the hearing of the jury and the court made the following inquiry:
“MR. BELL: Do you have a Bill of Sale in addition to that?
“THE WITNESS: That is the Bill of Sale.
“THE COURT: Who would own the trailer at the end of the contract?
“THE WITNESS: Both husband and wife. See, what G. E. requires . In other words this is just showing they accepted delivery and invoice for buying tags or whatever.
“THE COURT: So who owns the property right now?
*1353 “THE WITNESS: G. E. still owns it, General Electric Credit in Birmingham.
“THE COURT: Well that’s another problem, isn’t it?
“MR. SMITH: That’s another variance if G. E. owns it.
“THE COURT: That’s what I’m back here for right now. I think in a conditional sales contract the owner of the property is General Electric right now. This is one of those installment sales contracts where the — ”
After a lengthy discussion, the sales contract was admitted into evidence without objection.
During further cross-examination, Howell acknowledged that Kenneth E. Livingston’s name appeared on the invoice and that the sale of the trailer was based on the credit of the appellant, Kenneth E. Livingston. Further, he stated that under the line on which the signature of Margaret Livingston appeared, the contract indicated that this was the signature of the “co-buyer.”
The State next called Margaret Livingston, the appellant’s wife, who exercised her marital privilege not to testify against her husband.
At that point, the State called Marie Stevenson. She testified that the appellant was her son-in-law and that, on the 12th of August, 1978, she was living in the Livingston’s trailer, located on Whitefrost Drive in the Carlisle Trailer Court. She said that also living in the trailer at the time were her daughter and son-in-law, the appellant, as well as her granddaughter with her husband and their two children.
Further, Mrs. Stevenson testified that she recalled the night the trailer burned and said that she remembered her daughter having scratches on her neck and blood coming from her mouth. She also said that she and her granddaughter had taken her daughter to the hospital that night, and when they returned the next morning, the trailer had burned.
According to this witness’ testimony, there had not been any recent difficulty between the appellant and her daughter, Margaret Livingston. She explained “[t]hey had little arguments like family fusses, or something like that but I didn’t hear any threats.” However, after her recollection had been refreshed, she did remember that the appellant had said “that if he couldn’t live there, there wasn’t anybody else going to live there and he would burn it to the ground first.”
During cross-examination, Mrs. Stevenson stated that the appellant was living in the trailer at the time it burned and added “he had moved back in there that morning.”
At the end of her testimony, the State rested its case and the appellant made a motion to exclude the State’s evidence on the grounds that the State had failed to prove that the property was that of another, rather than that of the appellant.
Counsel for the appellant also argued that the State failed to prove that the appellant did not have express permission to burn the property, and that there was a fatal variance in the indictment.
The appellant’s motion was overruled and the appellant took the stand in his own behalf. He testified that “back in August, 1978,” he lived in a mobile home located in the Carlisle Trailer Park on 138 Whitefrost Drive. According to the appellant, the trailer belonged to him, although his wife had made the down payment out of their joint checking account. The appellant stated that all the payments made on the trailer had been made by him, and that his wife had not been employed at any time during their marriage.
He recalled that, on the day in question, he and his wife had been drinking that morning and that, after he had cut his lawn, he and his wife went to “Jake’s Fish Camp” and “drank some.” Afterwards, they got into an argument which resulted in the appellant hitting his wife and then letting her out of the car.
He stated that, at that time, he went back to the trailer and, when he arrived, all the doors were open and the lights were on. He said he drank two more beers, attempted to “fix a can of soup” and, after borrow *1354 ing a match, smoked a cigarette. He admitted borrowing a match from Brindle, but said he did not hear Brindle “holler” at him. Further, he denied setting the fire.
During cross-examination, the appellant admitted that he had been convicted of larceny on two occasions and had been sentenced to one year in one case and thirteen months in the other.
The appellant said that, on the night in question, he had hit his wife but that “she also swung at me.” However, the appellant explained, that when he hit her, “it wasn’t much harder than a slap on the side of the face.”
The appellant went on to explain that his wife received the bruises and scratches when she attempted to get out of the car and fell. The appellant stated that he was attempting to stop the car at the time but that she had opened the door and had tried to leave the car before he stopped.
Appellant said that, although his wife and mother-in-law had said that he had made threats to burn the trailer, he did not remember making such threats.
Further, he said that he had not gone back to see the trailer but he had learned that his belongings in the trailer were also burned. He explained that he did not want to go back to the trailer because “I didn’t want no trouble.” According to appellant, he had gone back out to see his wife the night the trailer burned and his wife’s son and another boy “jumped on” him, after which he was in the hospital for over a week.
On further questioning, the appellant said he and his wife went on living together after this incident and also stated that his wife never gave him permission to burn the trailer and that he never did.
I
The appellant contends that the State failed to prove a prima facie case of arson. He argues that the State failed to prove that he willfully set fire to a dwelling (trailer) and that it was the property of another.
Arson, as defined by the Supreme Court of Alabama, in Adams v. State, 62 Ala. 177, is an offense against the possession rather than against title or interest. Further, it is the possession, not the tenure or interest in the property, which must be described. Therefore, the indictment must aver that it was the house- of him or her who had “the actual occupancy.” Burton v. State, 39 Ala.App. 332, 101 So.2d 564.
In brief, the appellant concedes that the State met its burden as far as proving appellant set fire to the dwelling in question. He states that “apparently the State met its burden in proving the appellant actually set fire to a dwelling as the jury found him guilty. . . ”
As can be seen from the testimony recited above, the appellant was seen leaving the trailer by a witness who lived across the street. The witness stated that, as the appellant left the trailer, he saw “flickering light inside” the trailer. Also, the appellant’s stepdaughter stated that she was at a neighbor’s house across the street and she, too, testified that she saw the fire when her stepfather left the trailer and got into his car.
Under these facts, we believe that the State met its burden of proving that the appellant willfully set fire to the trailer.
Regarding the appellant’s contention that the State failed to prove that the property burned was that of another, the evidence recited above shows that the appellant’s wife was in possession of the trailer at the time it was burned. His stepdaughter, Alma McCormick, testified that the appellant was not staying in the trailer on the night it burned.
Although this fact is contested by appellant’s stepdaughter, Gina Hall and his mother-in-law, this discrepancy became a question for the jury in its deliberations. Under the facts in this case, there was sufficient evidence to show that possession and occupancy were in the wife of the appellant. Adams v. State, supra.
II
The appellant complains that the trial court committed reversible error when it *1355 refused to grant defendant’s motion to exclude the State’s evidence. He argues that, because the State failed to prove the appellant did not have express permission to burn the property, his motion should have been granted.
In Williams v. State, 177 Ala. 34, 58 So. 921, the Supreme Court of Alabama, in an opinion written by Justice Mayfield, declared:
“[T]hat an indictment charging the husband or the wife with arson of the property of the other need not allege the relationship of the parties, nor negative the fact that the property was burned without the express consent of the owner to so burn.”
In the absence of evidence tending to show consent was given, it would seem to follow that the State was not under an obligation to prove want of consent. Here, there was no evidence of consent.
Therefore, it is our judgment that the trial court was correct in refusing to grant the appellant’s motion to exclude on the grounds stated.
Ill
The appellant next complains that his motion to exclude should have been granted because there was a fatal variance in the indictment and the proof. The indictment in this case reads as follows:
“KENNETH LIVINGSTON, whose name is to the Grand Jury otherwise unknown, wilfully set fire to, or burned, or caused to be burned, or aided or procured the burning of a dwelling house, to-wit; a mobile home located at 138 White Frost Drive, Montgomery, Alabama, the property of Margaret Livingston. . . . ”
Under the rationale in Adams v. State, supra, no variance existed. The State’s evidence clearly showed that Margaret Livingston was, in fact, in possession, although there was some question as to who was title holder of the trailer.
IV
The appellant insists that the trial court committed error when it charged the jury in the following manner:
“There first must have been a building burned and it must have been willfully— which means basically intent—and maliciously burned. Those are basically the elements that are involved. In addition, it must have been the property of another. We are not talking about ownership here; ownership is not what we are talking about in arson. What we are talking of relates to actual occupancy, actual occupancy; not the nature of the estate or claim of the occupant. In addition, more than one person under the law may be an occupant or have a possessory interest in a piece of property. If I own Forest Hills Shopping Center with fifteen other people I am an owner of it to some extent but if I were to go burn it under our law I could be guilty of arson.” [Emphasis added.]
The appellant insists that this illustration given by the trial judge was confusing and erroneous.
This specific question was answered in Adams v. State, supra, and in Burton v. State, supra. Each held that the crime of arson was an offense against possession rather than against title or interest.
Based on the foregoing recitation of facts, we are of the opinion that the proof submitted by the State was sufficient to make out a prima facie case of arson and was sufficient to present a question for the jury. Winslow v. State, 76 Ala. 42; Burton v. State, supra.
We have examined this record and have found no error prejudicial to the appellant. Therefore, the judgment of conviction by the Montgomery Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.