This is an appeal from a judgment entered upon a jury verdict in favor of the plaintiff in a suit over title to a tract of land. Each party claimed title to a strip of woodland located between their farms, the plaintiff claiming title by deed and the defendant claiming title by adverse possession. The defendant attacks the judgment by raising two issues, viz.: (1) whether he was denied due process of law by the trial court's invasion of the jury's deliberations; and (2) whether he was denied due process of law by the trial court's alleged disparagement of defenses in the presence of the jury. We answer "No" to each issue and affirm the judgment.
The first issue springs from the manner in which the jury's verdict was received. The trial had continued on the preceding day until 6:40 p.m. at which time court was adjourned. At 9:00 a.m. the next morning the jury was allowed to view the land. They returned to the courthouse at 11:32 a.m., heard closing arguments, were instructed and given the case, and (with time allowed for a noon meal) began their deliberations.
When at 4:07 p.m. that afternoon the jury advised that they had reached a verdict, another case was being tried in the courtroom itself, presided over by the same trial judge who had presided over the instant case. The case being tried was recessed, and the verdict in question was received in the jury room, with the trial court, the parties, and their attorneys being present. We quote from the record the recital of what transpired:
 THE COURT: Now, before I even know what the verdict is — Of course, the verdict has to be unanimous: everybody has to agree. Now, let me ask you, not why you voted this way or anything else, is this your verdict. If it is, just say so.
Now, let me start here. Is this your verdict?
JUROR: Yes.
THE COURT: Is this your verdict?
JUROR: (Nods head up and down.)
THE COURT: Your verdict?
JUROR: Yes.
THE COURT: Your verdict?
JUROR: I guess so. I'm not exactly —
MR. TRAWICK: We move for a mistrial on that, Judge.
 THE COURT: Well, let's get past her and I'll come back to her.
Is this your verdict?
JUROR: Yes.
THE COURT: Your verdict?
JUROR: (Nods head up and down.)
THE COURT: Your verdict?
JUROR: (Nods head up and down.)
THE COURT: Your verdict?
JUROR: (Nods head up and down.)
THE COURT: Your verdict?
JUROR: (Nods head up and down.)
THE COURT: Your verdict?
JUROR: Uh-huh.
THE COURT: Your verdict?
JUROR: (Nods head up and down.)
THE COURT: Your verdict?
JUROR: (Nods head up and down.)
 THE COURT: All right. Now, then, let me get back to this. Is this your verdict?
JUROR: I guess so.
THE COURT: Well, not guess so. Is —
JUROR: Yeah, it's my verdict.
THE COURT: There was no coercion?
JUROR: Huh-uh.
 THE COURT: Well, all verdicts are the result of talking back and forth. Now, I don't know whether I told you that or not but that is the purpose of deliberations. If there is no coercion, of course, you have a right to make your own mind up. You were not forced by anybody to —
JUROR: Uh-huh.
 THE COURT: If you were not forced by anybody, then, of course, I'll accept it as your verdict. Now, this is your verdict?
JUROR: (Nods head up and down.)
 THE COURT: All right, it is your verdict. Now, I don't even know what the verdict is. Where is your verdict?
(Verdict handed to the Court.) *Page 207 
 THE COURT: Let the record show that each one stated that it was their verdict and the verdict is, "We, the jury, find for the plaintiff, Mrs. Bennie Reynolds Rush, and against the defendant, John L. Comer, and fix the true line between them as the section line between sections 28 and 29, as shown by Plaintiff's Exhibit 1."
 MR. TRAWICK: We move for a mistrial on the ground that one of the jurors didn't fully consent to the verdict: It is not a unanimous verdict.
 THE COURT: I overrule your motion because I have accepted her assurance that it was her verdict, —
JUROR: Yes, sir.
 THE COURT: — and she is now shaking her head it is her verdict, and I do accept it as the verdict of the jury.
 Thank you very much, and I'll see you all at 9 o'clock in the morning.
We cannot conclude from this exchange that there was any interference with the jury's deliberations by the trial court.
The purpose of polling the jury before the verdict is recorded is to give each juror the opportunity to declare his assent to what the foreman will return, and thus to enable the court to determine that the jurors are in agreement. See generally Annot. 71 A.L.R.2d 640 and Annot. 25 A.L.R.3d 1149. And although the parties by statute are given the right to poll the jury before the verdict is entered, Code of 1975, §12-16-15, we do not doubt that the trial judge, for the above reasons, may in his discretion poll the jury ex mero motu prior to the time the verdict is received. Indeed, a verdict is not a finding by the jury until approved and accepted by the court.Robert P. Stapp Machinery Co. v. Russell, 277 Ala. 84,167 So.2d 167 (1974). We find no abuse of that discretion here in the trial court's decision to poll the jury before the verdict was announced.
Nor was any error committed in the process the court used to ascertain the verdict of the juror who first hesitated in response to its inquiry. In Winslow v. State, 76 Ala. 42
(1884), a polled juror responded, "not exactly"; after further deliberation the juror stated, "I agree to it." That answer was held to be agreement with the verdict. And in Martin v. State,23 Ala. App. 281, 124 So. 392; cert. den. 220 Ala. 149,124 So. 393 (1929), the polled juror first answered, "I reckon so," but upon further questioning stated that the verdict was that of the jury and he agreed to it. The Court observed:
 The court was fully authorized to find, from the examination of said juror on the poll, that the verdict returned represented his convictions. When this is true, the verdict is sufficient and will be received. [Citations omitted.]
See also McAlpine v. State, 117 Ala. 93, 23 So. 130 (1898).
We note further that the defendant moved for a mistrial without first requesting that the court order further deliberations. Such a request is required as a condition precedent to a request for a mistrial, in keeping with the mandatory language of § 12-16-15, "if any answer in the negative, the jury must be sent out for further deliberation."Perry v. State, 56 Ala. App. 454, 322 So.2d 745 (1975); Ray v.State, 39 Ala. App. 257, 97 So.2d 594 (1957).
Under the second issue, we find no "disparagement of defenses" in the jury's presence. The issue presented relates to certain lines which had been drawn upon an aerial photograph, and upon an overlay of that photograph, admitted into evidence. James Ray, a civil engineer and land surveyor, testified that he had prepared the overlay, and that the lines drawn thereon had nothing to do with property lines, but referred only to A.S.C.S.[1] work. On cross-examination, counsel for the defendant was allowed to interrogate Ray about the section and mark lines on the overlay and photograph, and then asked:
 Q. Right. Now, these lines that are on the government map here, the department of agriculture map, indicate the property lines, do they not? *Page 208 
MR. WHIGHAM: Your Honor, we object to this. We will have someone from the A.S.C.S. to testify to that.
 THE COURT: I believe Mr. Ray testified he didn't put the line there and is not knowledgeable as to why they are there. Mr. Wynn will testify to that. I sustain the objection.
MR. TRAWICK: We except.
Another witness, Jim Wynn, an employee of A.S.C.S., testified that the lines appearing on the photograph pertained to A.S.C.S. work and were not intended as property lines. In cross-examination of this witness, defendant was allowed to ask questions concerning the indications of the lines, and continued:
 Q. So, these lines here, just like you have got them running up here through the woods and not through the fields, wouldn't that be to indicate where you consider the landline to be?
A. No, sir.
 MR. WHIGHAM: I object, your Honor. He has answered the question.
THE COURT: Overruled, cross-examination. Overruled.
Q. What does it indicate, Mr. Wynn?
 A. It indicates that it is open land in this area right here that is covered under this worksheet which is number —
 Q. Now, this worksheet number N-56, I believe it is, would indicate a given farm, would it not?
A. So far as open land is concerned.
Q. And a given farmer?
A. So far as the open land is concerned, yes, sir.
 [The defense counsel continued his questioning trying to indicate that the mark was an indication of a property line and the following took place:]
 Q. And then across this line would indicate the Comer property, wouldn't it?
 MR. WHIGHAM: Your Honor, the witness has testified these are not indications of property lines.
 THE COURT: I'm going to sustain the objection to any further questions about the line with any implication that is a landline, because Mr. Wynn has stated that it is, simply, a dividing line in his office to divide one person's property, generally, from another. It is not laid down with any intention of showing the landline.
 MR. TRAWICK: Your Honor, I'm not saying he is a surveyor.
 THE COURT: You are leaving an impression on the jury that that is the landline.
 MR. TRAWICK: No, the impression I'm seeking to create is one I hope you will let me —
 THE COURT: I think it has — When this line was put down, somebody just put the ruler down there for their purposes. It has nothing to do with where the landline is between those peoples property.
 MR. TRAWICK: Judge, I'm not yet suggesting that is an accurate landline, and I do not intend to later; but, I do want to show that the department of agriculture has treated it as a dividing line between the Rushes and the Comers.
 THE COURT: But not as a landline: It is a dividing line for their purposes in their office.
 MR. TRAWICK: Right, in their office just as others have treated it as such, may it please the Court, as the evidence —
 THE COURT: (Interposing) How does that refer to the evidence here that it created it one way or — We are looking for a landline between the property.
 MR. TRAWICK: May it please the Court, they have offered this in evidence.
THE COURT: Yes, sir.
 MR. TRAWICK: They have offered the lines and there is a variance, if your Honor would look at it closely, between where the surveyor put the line and where the department of agriculture has the line.
 THE COURT: The department of agriculture didn't put a landline, the surveyor put a landline: that is the trouble. Now, just go on and ask him another question and we will proceed. *Page 209 
We must point out that defense counsel made no specific objection to any of these rulings of the court, and hence failed to preserve anything for review if those rulings were not manifestly erroneous. On the question of abuse of the right to cross-examine, see Carlisle v. Miller, 275 Ala. 440,155 So.2d 689 (1963). It appears from the record that defense counsel had received the witness's response to his inquiry concerning the effect of the lines more than once, and his further inquiries may have tended to be argumentative.[2] In any event, the trial judge was exercising his discretion to maintain control over the extent of the cross-examination, and from the record we cannot hold that his discretion was abused.
Having found no error under the issues raised, we have concluded that the judgment must be affirmed. It is so ordered.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] Apparently a reference to the Agricultural Stabilization and Conservation Service.
[2] The record, in fact, shows that the cross-examination of Wynn specifically included inquiry concerning an ancient fence depicted by a line on the photograph:
Q. Was that intended to indicate a fence line or what?
 A. No, just an area. In other words, this line inside of this line is the back line that goes under that worksheet separating crop land, mainly.